949 F.2d 401
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 David Paul HAMMER, Plaintiff-Appellant,
v.
James L. SAFFLE, Warden; Bobby L. Boone, Deputy Warden;
Rita Andrews, Deputy Warden; Linda Morgan; Lee Mann;
Lloyd Basinger; Bobby Tharpe; Gary D. Maynard, Director;
Larry A. Fields, Associate Director; Jerry Johnson,
Defendants-Appellees.
 No. 91-7038.
 United States Court of Appeals, Tenth Circuit.
 Nov. 29, 1991.
 
 Before STEPHEN H. ANDERSON, BARRETT and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff David Paul Hammer, an inmate of the Oklahoma State Penitentiary (OSP) at McAlester, Oklahoma, appeals the district court's dismissal of his pro se civil rights action as frivolous under 28 U.S.C. § 1915(d). Plaintiff filed his action under 42 U.S.C. § 1983, seeking declaratory, injunctive, and damage relief against the warden and several subordinate officers at OSP. In his complaint Plaintiff alleged various violations of his First, Eighth, and Fourteenth Amendment rights including (1) restricted housing which denies him access to the courts; (2) denial of freedom of association due to restrictions on his visitations; (3) denial of mail privileges; (4) denial of telephone contact with the news media and outside persons; (5) denial of contact with religious advisers and religious materials;[1] (6) denial of right to exercise during daylight hours with the rest of the prison population; and (7) denial of adequate dental care.
 
 
 3
 On appeal, Plaintiff argues that (1) that the district court erred by dismissing his civil rights claims as frivolous; and (2) the district court abused its discretion by denying his Motion to Supplement Complaint.
 
 
 4
 We review the district court's dismissal under § 1915(d) for an abuse of discretion. Yellen v. Cooper, 828 F.2d 1471, 1475 (10th Cir.1987). Although we construe a pro se complaint liberally, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), it can be dismissed under § 1915(d) "if plaintiff cannot make a rational argument on the law and facts in support of his claim." LaFevers v. Saffle, 936 F.2d 1117, 1118 (10th Cir.1991). The statute allows the court the "power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989).
 
 
 5
 It is undisputed that Plaintiff had engaged in numerous serious illegal activities while at OSP. Plaintiff sent letters containing death threats to Oklahoma County District Court Judge James Blevins, Western District of Oklahoma Judge David Russell, and Oklahoma County Assistant District Attorney Lou Keel. In these letters, Plaintiff claimed to have contacts on the outside who were going to "murder" these court officers. Plaintiff also claimed that he had directed a contact on the outside to place pipe bombs in the Oklahoma State Capitol building and the Oklahoma County Courthouse.
 
 
 6
 In addition, Plaintiff was involved in various scams to extort and attempt to extort money from persons on the outside. Plaintiff attempted to obtain money from another inmate's father by claiming the money was necessary in order to get the inmate transferred to a medium security facility. Also, a man Plaintiff contacted through a gay magazine sent him approximately $2,000.00 before he became suspicious and contacted the authorities. In response to these activities, prison officials isolated him from the general prison population and restricted his access to the mail, to visitations, and to the use of the telephone.
 
 
 7
 At the district's court's direction, the Defendants prepared and filed a Martinez report. "The purpose of the Martinez report is to identify and clarify the issues plaintiff raises in his complaint." Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir.1991) (citing Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir.1978); Gee v. Estes, 829 F.2d 1005, 1007 (10th Cir.1987)). In determining the function of a Martinez report in a § 1915(d) dismissal, this court has stated:
 
 
 8
 Although a court may consider the Martinez report in dismissing a claim pursuant to § 1915(d), it cannot resolve material disputed factual issues by accepting the report's factual findings when they are in conflict with pleadings or affidavits. A bona fide factual dispute exists even when the plaintiff's factual allegations that are in conflict with the Martinez report are less specific or well-documented than those contained in the report.
 
 
 9
 Hall, 935 F.2d at 1109 (citations omitted). Consequently, as the reviewing court, we consider the Martinez report only for the purpose of identifying and clarifying Plaintiff's complaints.
 
 
 10
 Although prisoners retain some constitutional rights, Bell v. Wolfish, 441 U.S. 520, 545 (1979), incarceration naturally limits constitutional rights "due to considerations underlying our penal system," LaFevers v. Saffle, 936 F.2d at 1119. In Turner v. Safley, 482 U.S. 78 (1987), the Supreme Court set forth the applicable standard and the factors which must be considered in determining whether a prison restriction overburdens a prisoner's constitutional rights. A prison "regulation is valid if it is reasonably related to legitimate penological interests." Id. at 89. The factors which must be considered by the court in making a reasonableness determination are (1) whether there is "a 'valid, rational connection' between the prison regulation and the legitimate governmental interest;" (2) whether there are alternative ways of exercising the constitutional right available to the prisoner; (3) the impact of the regulation on other inmates, prison personnel and prison resources; and (4) whether the regulation is an "exaggerated response" to the prison's concerns. Id. at 89-91 (quoting Block v. Rutherford, 468 U.S. 576, 586 (1984)).
 
 
 11
 Plaintiff first argues that his isolation from the general prison population constitutes an unreasonable restriction. Plaintiff resides in a specially constructed cell, takes his exercise period early in the morning by himself, and uses the library in alternative ways to preclude his contact with other inmates. Plaintiff alleges that the "mandatory language" of the prison regulations create a "federally protected liberty interest" which precludes the restrictions placed on him. Appellant's Br. at 4. Thus, Plaintiff's contentions do not challenge the constitutional validity of the prison regulations, but only whether the restrictions are excessive.
 
 
 12
 The applicable prison regulation allows for placing a prisoner in a restricted living arrangement if "the continued presence of the inmate in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly operation of the correctional facility." Appellant's Br. at 34. Considering the very serious nature of Plaintiff's threats and other illegal activities and his allegations regarding outside contacts willing to carry out his threats, it is our determination that these restrictions, although drastic, are reasonable and necessary responses to OSP's legitimate security concerns. Therefore, Plaintiff's claims of constitutional violation regarding the conditions of his restricted housing and the need to isolate him from the general prison population were properly dismissed.
 
 
 13
 Plaintiff next argues that he has been denied access to the courts. The Supreme Court has held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). The constitutionally relevant benchmark is meaningful, not total or unlimited, access. Id. at 823. The Fourteenth Amendment right of due process via access to the courts "has not been extended ... to apply further than protecting the ability of an inmate to prepare a petition or complaint." Wolff v. McDonnell, 418 U.S. 539, 576 (1974).
 
 
 14
 In his brief, Plaintiff refers to a missed "legal deadline that resulted in a state procedural default and prohibited any further review by the state of [sic] federal courts." Appellant's Br. at 12. Plaintiff fails, however, to allege sufficient facts to apprise this court of the nature of this missed "legal deadline" or the specific impact of the actions or inactions of Defendants on the alleged default. We have previously stated that a plaintiff, even if pro se, must allege sufficient facts about material events to preclude the need for speculation by the court as to whether such facts exist. Hall, 935 F.2d at 1110.
 
 
 15
 Plaintiff complains that his access to the courts has been further hindered by Defendants' denial of visits by an outside "paralegal." Although there is no dispute that Plaintiff's visitors have been limited to a restricted list, Plaintiff does not allege that he has been denied visits with his attorney, or that his attorney has attempted to visit with him and been denied. He also does not allege that he is being denied telephone access to his attorney. In Procunier v. Martinez, 416 U.S. 396, 420 (1974), the Supreme Court stated:
 
 
 16
 The extent to which that right [to access to counsel] is burdened by a particular regulation or practice must be weighed against the legitimate interests of penal administration and the proper regard that judges should give to the expertise and discretionary authority of correctional officials.
 
 
 17
 We are adverse to concluding that the restrictions of which Plaintiff complains are unreasonable or unjustified.
 
 
 18
 Plaintiff claims, and Defendants do not deny, that when Plaintiff's illegal activities were discovered, all of his personal possessions including his legal papers and materials were removed from his cell. Because Plaintiff admits that all of his personal possessions were subsequently returned to him, Appellant's Br. at 10, and he does not allege any loss or destruction, we consider the issue to be moot.
 
 
 19
 Plaintiff further alleges that his restricted use of the library has thwarted his legal efforts. In response, Defendants cite to this court's opinion in Twyman v. Crisp, 584 F.2d 352, 358 (10th Cir.1978), in which we held that restricted access to the library did not "per se" constitute denial of court access. Plaintiff does not allege that he is being denied total access to a law library or to in-house legal assistance. See Campbell v. Miller, 787 F.2d 217, 227 (7th Cir.) (restricting library access does not deprive inmate of court access), cert. denied, 479 U.S. 1019 (1986). Plaintiff appears to have been afforded the necessary resources and assistance to file the complaint underlying this action. Consequently, we conclude that the restrictions placed on Plaintiff's use of the law library have not denied him legal assistance, but have only limited its availability. These restrictions are a result of the Defendants' need to closely monitor Plaintiff's associations, and as such are reasonable, necessary precautions. Plaintiff has not demonstrated that these restrictions have created an unreasonable barrier to his ability to avail himself of legal materials and assistance.
 
 
 20
 In response to Plaintiff's use of the mail to make death threats and to extort money, the prison authorities restricted his ability to correspond freely with outside persons. The Supreme Court has held that regulations placing restrictions on prisoner mail are justified if the mail contains information regarding criminal activity. Procunier, 416 U.S. at 413. Plaintiff does not take issue with the prison's monitoring of his mail, but only with the restriction limiting his correspondence to persons on an approved list. Plaintiff does not refute that he is allowed correspondence with his family and his attorney of record, but claims that the institution has "no legitimate reason" to restrict his correspondence. We disagree. It is abundantly clear, that in light of Plaintiff's illegal and dangerous activities, OSP's mail restrictions serve a reasonable security concern.
 
 
 21
 Plaintiff's complaint regarding the restrictions placed on his use of the telephone also succumbs to legitimate penological concerns. Plaintiff is restricted from dialing his own telephone calls. He states that there is "no justification" for these restrictions on his telephone privileges. Again, we conclude that, considering Plaintiff's threats regarding his outside contacts, the response of the prison authorities in restricting his telephone access is not exaggerated, and constitutes a justified and reasonable security measure, leaving Plaintiff sufficient alternatives.
 
 
 22
 Absent substantial evidence to indicate that prison officials have exaggerated their response to the need for heightened security restrictions, we must defer to their judgment. Pell v. Procunier, 417 U.S. 817, 827 (1974); Bell v. Wolfish, 441 U.S. at 551. Plaintiff has failed to convince us that the restrictions placed on him by the prison officials are not reasonably related to the prison's duty to serve its security interests. The need to restrict Plaintiff's activities and associations is obvious. Under the circumstances, we conclude OSP has adequately addressed its concerns regarding Plaintiff's conduct while offering him adequate alternatives for exercising his rights. Thus, Plaintiff's complaints regarding these restrictions were properly dismissed.
 
 
 23
 Next, Plaintiff claims that he has been denied adequate dental care in violation of his Eighth Amendment right to be free of cruel and unusual punishment. In order for Plaintiff's claim to rise to the level of a constitutional violation, he must demonstrate that prison officials have shown a deliberate indifference to his serious dental needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). Deliberate indifference to prisoners' serious medical needs constitutes the "unnecessary and wanton infliction of pain." Id. at 105; see also Rhodes v. Chapman, 452 U.S. 337, 347 (1981) (conditions which are "restrictive and harsh" do not necessarily constitute cruel and unusual treatment).
 
 
 24
 The "deliberate indifference standard under Estelle has two components: an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind." Miller v. Glanz, No. 91-5024, slip op. at 14, (10th Cir. Nov. 18, 1991) (1991 WL 237561) (citing Wilson v. Seiter, 111 S.Ct. 2321, 2324 (1991)). Even if we were to ascertain that the deprivation of dental care Plaintiff complains of was sufficiently serious, he has failed to demonstrate that the prison authorities have exhibited the necessary intent to deliberately deprive him of needed care. See Miller, No 91-5024, slip op. at 14-15.
 
 
 25
 Plaintiff does not allege that he has been denied all dental care, only that the care provided has not been adequate. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. Even construing Plaintiff's complaint liberally, and accepting his factual allegations as true, we agree with the district court that Plaintiff's difference of opinion as to what type of dental care he should receive does not give rise to a constitutional cause of action. See Smart v. Villar, 547 F.2d 112, 114 (10th Cir.1976). The claim was properly dismissed.
 
 
 26
 Finally, Plaintiff claims that the district court erred in denying him permission to amend his original complaint to add the chief staff physician, the head of psychological services and the institutional health services administrator as defendants, and to add the claim that, in addition to the deprivations complained of in his original complaint, Plaintiff had also been denied psychiatric and psychological services. The denial of a motion to amend a complaint is in the sound discretion of the trial court. Culver v. Town of Torrington, 930 F.2d 1456, 1461 (10th Cir.1991) (citing Federal Ins. Co. v. Gates Learjet Corp., 823 F.2d 383, 387 (10th Cir.1987)).
 
 
 27
 Plaintiff's motion does not seek to correct deficiencies in his original complaint, but instead requests inclusion of additional defendants as well as a new cause of action. There is nothing to indicate that Plaintiff was unaware of this claim at the time he filed his original complaint. " 'Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial.' " Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir.1990) (quoting State Distributors, Inc. v. Glenmore Distilleries Co., 738 F.2d 405, 416 (10th Cir.1984)); see also Federal Ins. Co., 823 F.2d at 387 (party desiring leave to amend must demonstrate excusable neglect). Consequently, the district court did not abuse its discretion in denying Plaintiff's Motion to Supplement Complaint.
 
 
 28
 In conclusion, we hold the district court was correct in dismissing all of Plaintiff's claims under 28 U.S.C. § 1915(d), as lacking an arguable basis in fact or law. Therefore, Defendants' Motion to Supplement the Record is GRANTED, Plaintiff's Motion for Leave to Proceed on Appeal in Forma Pauperis is DENIED, and the case is DISMISSED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collatral estoppel. 109th Cir.R. 36.3
 
 
 [1]
 Although Plaintiff lists the issue of denial of freedom of religion on appeal, he fails to argue this issue in his brief. Therefore, we consider the issue abandoned. Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir.1990)