**Seth YELLEN, a/k/a Ronald Larkins, Plaintiff-Appellant,**

v.

**Thomas I. COOPER, Superintendent, Shadow Mountain Correctional Facility, and Lt. Ted Weber, Correctional Officer, Defendants-Appellees.**

No. 86–1430.

United States Court of Appeals, Tenth Circuit.

Sept. 11, 1987.

Seth Yellen, pro se.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Robert M. Petrusak, Asst. Atty. Gen., Denver, Colo., for defendants-appellees.

Before LOGAN and TACHA, Circuit Judges, and O'CONNOR, District Judge.*

TACHA, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.8(c) and 27.1.- 2. The cause is therefore ordered submitted without oral argument.

Plaintiff Seth Yellen appeals from the summary dismissal of his complaint in district court. Yellen filed his complaint in forma pauperis alleging the defendants violated his constitutional rights by failing to inform him of certain pretransfer rights pursuant to the Interstate Agreement on Detainers Act (IADA). The district court dismissed the complaint sua sponte finding Yellen had waived any rights the IADA had afforded him. We affirm.

On April 22, 1983, Yellen, then a prisoner at the Shadow Mountain Correctional Facility at Canon City, Colorado, was given a copy of a "request for temporary custody" from the assistant prosecuting attorney of Calhoun County, Michigan. This document constituted a prosecutor's request for temporary custody as provided for in Article IV of the IADA, which is codified in Colorado as Colo.Rev.Stat. §§ 24–60–501 to –507 (1973). The request recited that the State of Michigan sought to have the plain-

---

* The Honorable Earl E. O'Connor, Chief Judge, United States District Court for the District of Kansas, sitting by designation.

tiff transferred to Michigan to stand trial for the crimes of armed robbery and possession of a firearm during the commission of a felony. Along with the copy of the request, Yellen was given forms that permitted him to request or decline a speedy trial on the Michigan charges. He completed the forms that same day and requested a speedy trial. On May 19, 1983, Yellen was transported to Michigan where he was tried, convicted, and sentenced. Thereafter, he was returned to Colorado. The Michigan authorities filed a detainer with the Colorado prison officials to ensure that he would be sent to serve his Michigan sentence at the conclusion of his Colorado sentence.

The district court granted Yellen leave to file a complaint in forma pauperis pursuant to 28 U.S.C. § 1915. The complaint and supporting brief, filed under 42 U.S.C. § 1983, basically alleged that his rights to due process and equal protection had been violated when the defendant Colorado prison officials failed to inform him of his pretransfer rights. These rights include the right to a pretransfer hearing, the right to the appointment of counsel, the right to seek a writ of habeas corpus, and the right to petition the governor of Colorado to stop the transfer. Yellen sought a declaratory judgment and preliminary and permanent injunctions preventing his surrender to the Michigan authorities. The complaint was accompanied by a motion for appointment of counsel.

Pursuant to D.Colo.R. 605(B), the case was referred to a magistrate. The magistrate entered an order denying the motion for appointment of counsel and issued a report which recommended that the complaint be dismissed. The magistrate construed Yellen's complaint as a 28 U.S.C. § 2254 petition for a writ of habeas corpus collaterally challenging his Michigan conviction. The magistrate's recommendation of dismissal was based on his determinations that Yellen had failed to exhaust available state remedies and that a constitutional claim had not been stated. Yellen filed an objection to the magistrate's interpretation of the complaint as a petition for habeas corpus. The same day he amended his complaint to request damages in addition to injunctive relief.

The district court examined the entire case de novo. The court considered the amended complaint and the plaintiff's objection to the magistrate's ruling and concluded Yellen could "properly predicate his action on § 1983." The court then dismissed the complaint sua sponte, holding Yellen had "waived his pretransfer rights under the IADA by failing to assert them prior to his trial and subsequent conviction and appeal of the Michigan criminal charges." We agree with the holding of the district court and, accordingly, affirm the order of dismissal.

■ The IADA "is intended to remedy hardships resulting from the use of detainers and to eliminate potential abuses of the detainer system." *Gray v. Benson,* 608 F.2d 825, 827 (10th Cir.1979); *see also, e.g., United States v. Lawson,* 736 F.2d 835, 839 (2d Cir.1984); *United States v. Ford,* 550 F.2d 732, 737–40 (2d Cir.1977), *aff'd sub nom. United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Article III of the IADA allows a prisoner to initiate proceedings for his transfer to another jurisdiction for trial. The warden must notify the prisoner of all outstanding detainers and inform him of his right to request a final disposition of the underlying charges. *Brown v. Wolff,* 706 F.2d 902, 905 (9th Cir.1983). If the prisoner makes such a request, the prison authorities must offer custody of the prisoner to the authorities that have lodged the detainer. *Ford,* 550 F.2d at 741. Article IV governs requests for transfer that are initiated by the prosecutor.

Most of the pretransfer rights which Yellen claims he was denied are not in the IADA. Rather, they are in the Uniform Criminal Extradition Act (Extradition Act), codified in Colorado as Colo.Rev.Stat. §§ 16–19–101 to –132 (1986). A prisoner transferred under the Extradition Act is explicitly granted a right to a pretransfer hearing at which he is informed of the receiving state's request for custody, his right to counsel, and his right to apply for

a writ of habeas corpus challenging the custody request. He is also permitted a reasonable time in which to apply for the writ. *See* Colo.Rev.Stat. § 16–19–111. The Supreme Court in *Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981), held that the rights afforded a prisoner under the Extradition Act are preserved by the IADA for a prisoner who is being transferred against his will under Article IV.

However, a prisoner may waive his rights under the IADA. *Gray,* 608 F.2d at 827. Waiver is shown by proof that the prisoner has affirmatively requested treatment in a manner contrary to Article IV(c) or (e). *Kowalak v. United States,* 645 F.2d 534, 537 (6th Cir.1981); *United States v. Eaddy,* 595 F.2d 341, 344 (6th Cir.1979). In the present case, the district court found Yellen signed a form requesting final disposition of the Michigan detainer. Making such a transfer request constitutes an affirmative act which signals waiver of rights under the IADA. *See, e.g., Gray,* 608 F.2d at 827.

Yellen alleges two errors on appeal. The principal alleged error is the determination by the district court that Yellen waived his rights. He contends that it was error to find that he waived his rights when he did not even know that he had such rights at the time he is said to have waived them. Essentially, he maintains that he could not properly be found to have waived his rights because the fact of their existence was concealed from him by the defendants. The district court addressed this matter and cited Colorado case law for the proposition that waiver of these rights need not be knowing or intelligent. While this holding is correct, it is better to refer to federal law for this proposition. "[T]he Detainer Agreement is a congressionally sanctioned interstate compact the interpretation of which presents a question of federal law." *Cuyler,* 449 U.S. at 442, 101 S.Ct. at 708.

In matters implicating constitutional rights, the generally applicable definition of waiver is an "intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The Supreme Court has repeatedly affirmed the principle that there is no presumption of acquiescence in the loss of fundamental constitutional rights. *See Fuentes v. Shavin,* 407 U.S. 67, 94 n. 31, 92 S.Ct. 1983, 2001 n. 31, 32 L.Ed.2d 556 (1972). Indeed, every reasonable presumption should be indulged against finding a waiver of constitutional rights. *Id.*

■ Yellen apparently believes that the defendants' failure to inform him of his pretransfer rights amounts to a violation of his constitutional rights for which any waiver must be knowing and intelligent. However, the protections of the IADA "are not founded on constitutional rights, or the preservation of a fair trial, but are designed to facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner in another jurisdiction." *United States v. Black,* 609 F.2d 1330, 1334 (9th Cir.1979), *cert. denied,* 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980). The rights created by the IADA are statutory, not fundamental or constitutional in nature. *Greathouse v. United States,* 655 F.2d 1032, 1034 (10th Cir.1981), *cert. denied,* 455 U.S. 926, 102 S.Ct. 1289, 71 L.Ed.2d 469 (1982); *Eaddy,* 595 F.2d at 346. The IADA has appropriately been characterized as creating a statutory right to speedy trial. *United States v. Scheer,* 729 F.2d 164, 170 (2d Cir.1984); *United States v. Odom,* 674 F.2d 228, 230 (4th Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982). The concerns behind the enactment of the IADA are not of the truth-seeking kind that would normally prompt application of the constitutional standard of waiver and, therefore, the "knowing and intelligent" standard is not the appropriate test for determining whether or not there has been a waiver of IADA rights. *See Lawson,* 736 F.2d at 839. *Accord Odom,* 674 F.2d at 230; *Black,* 609 F.2d at 1334.

■ Yellen's remaining assignment of error is a claim that the district court improperly dismissed his complaint on the basis of waiver because waiver is an af-

firmative defense and therefore must be actually pled by the defendant before it can used as the basis of a dismissal. The defendants were never served in this action, and the district court dismissed the action sua sponte.

We have set forth the proper procedure regarding the initial handling of actions under 28 U.S.C. § 1915(d):

> Summary dismissal is appropriate under certain circumstances. When a motion to proceed in forma pauperis is filed and the poverty affidavit is facially sufficient, the complaint should be filed. The complaint is then tested under 28 U.S.C. § 1915(d), and if found to be frivolous, improper, or obviously without merit, the case is subject to dismissal. This court has made clear in numerous cases that a trial court need not require service of the complaint and filing of an answer in cases of this type where on the face of the complaint it clearly appears that the action is frivolous or malicious.

*Henriksen v. Bentley*, 644 F.2d 852, 853–54 (10th Cir.1981) (citations omitted); *accord Phillips v. Carey*, 638 F.2d 207, 208–09 (10th Cir.), *cert. denied*, 450 U.S. 985, 101 S.Ct. 1524, 67 L.Ed.2d 821 (1981).

Mindful that pro se actions are held to a less stringent standard of review and that sua sponte dismissals are generally disfavored by the courts, we nonetheless allow a complaint to be dismissed under § 1915(d) "if the plaintiff cannot make a rational argument on the law and facts in support of his claim." *Van Sickle v. Holloway*, 791 F.2d 1431, 1434 (10th Cir.1986); *accord Henriksen*, 644 F.2d at 854. Dismissal under 28 U.S.C. § 1915(d) is discretionary and our review must focus on whether the district court abused that discretion in dismissing the plaintiff's complaint. *Van Sickle*, 791 F.2d at 1434; *accord Nash v. Black*, 781 F.2d 665, 668 (8th Cir.1986).

Some courts have discussed the propriety of a district court's sua sponte dismissal of a complaint pursuant to 28 U.S.C. § 1915(d) on the basis of what would be an affirmative defense if pled by a defendant. The court in *Holsey v. Bass*, 519 F.Supp. 395, 408–09 (D.Md.1981), *aff'd sub nom. Todd v.*

*Baskerville*, 712 F.2d 70 (4th Cir.1983), stated the following:

> There is a split of authority as to whether a court can consider affirmative defenses in ruling pursuant to § 1915(d) that a complaint is frivolous or malicious. *Compare Daves v. Scranton*, 66 F.R.D. 5, 7 (E.D.Pa.1975) (court can consider affirmative defense *sua sponte*) *with Sinwell v. Schapp*, 536 F.2d 15, 19 (3 Cir.1976) (court cannot dismiss *sua sponte* on the grounds of improper venue because venue is a waivable defense). Generally, it is the duty of the defendant to plead affirmative defenses, and the court cannot raise such defenses *sua sponte*. F.R.Civ.P. 8(c). This Court concludes, however, that given the competing policy considerations reflected in § 1915(d), discussed *supra*, such defenses should be considered by a court *sua sponte*, in certain limited circumstances, such as those found in the case at bar, in determining whether a complaint is frivolous or malicious.

In *Henriksen*, this court touched on the propriety of dismissing a complaint pursuant to § 1915(d) on the basis of an affirmative defense. In that case the district court concluded the plaintiff's complaint was frivolous because the defendants named in the complaint, a state district judge and a state court clerk, enjoyed absolute judicial immunity. 644 F.2d at 853. On appeal the plaintiff argued his complaint was improperly dismissed because immunity is an affirmative defense which must be initially raised by the defendant.

We reversed in part on the issue of dismissal of the state court clerk. We held that due to the factual nature of a "qualified" immunity for public officials "the scope of the immunity, if any, that should be afforded to a clerk of court can only be determined on a more developed factual record." *Id.* at 856. Discussing the district court's dismissal under § 1915(d) in such a case, we said:

> Where a public official has or may have a defense based on qualified immunity, the burden is on the official to raise the defense and establish his entitlement

to immunity. This is not to say that in every case in which qualified immunity is an issue, a trial on the merits is necessary. Summary disposition consistent with the Federal Rules of Procedure may be appropriate. However, dismissal of the complaint pursuant to 28 U.S.C. § 1915 is not appropriate in such cases.

*Id.* (citations omitted).

We found the complaint against the judge in *Henriksen* frivolous because it contained "no allegation which has any tendency to support [the plaintiff's] contention that the judge is liable under § 1983." *Id.* at 854. Therefore, we declined to decide whether the affirmative defense of absolute judicial immunity supported dismissal of the complaint.[1]

Since *Henriksen,* we have affirmed the sua sponte dismissal of a complaint under § 1915(d) on the basis of absolute immunity of the defendant when it was clear the defense precluded a rational argument on the law and facts of the plaintiff's claim. *See Van Sickle,* 791 F.2d at 1434–35; *accord Crisafi v. Holland,* 655 F.2d 1305, 1308 (D.C.Cir.1981) ("An *in forma pauperis* complaint is properly dismissed as frivolous prior to service of process if it is clear from the face of the pleading that the named defendant is absolutely immune from suit on the claims asserted.")

 Waiver, like immunity, is an affirmative defense which must be affirmatively pleaded. Fed.R.Civ.P. 8(c); *accord Pan Am. Bank v. The Oil Screw Denise,* 613 F.2d 599, 602 (5th Cir.1980); *Barnwell & Hays, Inc. v. Sloan,* 564 F.2d 254, 255 (8th Cir.1977). However, the policy underlying Rule 8(c), affording the plaintiff adequate notice of unanticipated defenses, is not violated when the plaintiff's in forma pauperis complaint itself sets out facts plainly demonstrating the affirmative defense. As we noted earlier, the district court found the "complaint on its face" indicated that Yellen "signed a written request for final disposition of [the Michigan] detainer." More-

over, the court found plaintiff's amended complaint "more clearly" asserted he was provided forms to request final disposition but was not told of his pretransfer rights. Under the case law governing the interpretation of the IADA, the plaintiff's conduct clearly established waiver as a matter of law.

The affirmative defense, in this instance, was obvious from the face of the complaint. No further factual record was required to be developed in order for the court to assess the Yellen's chances of success. Accordingly, no rational argument could be made on the law and the facts of this case to support the plaintiff's claim. Therefore, the district court did not abuse its discretion in dismissing the complaint pursuant to § 1915(d).

AFFIRMED.

---

**1.** "[I]mmunity, whether qualified or absolute, is an affirmative defense which must be affirmatively pleaded...." *Kennedy v. City of Cleveland,* 797 F.2d 297, 301 (6th Cir.1986), *cert.* denied, —— U.S. ——, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1987); *see also Harlow v. Fitzgerald,* 457 U.S. 800, 815 n. 24, 102 S.Ct. 2727, 2736 n. 24, 73 L.Ed.2d 396 (1982).