42 F.3d 1472
 Ghulam Mohammed NASIM, Plaintiff-Appellant,
and
Ghulam Ahmed Nasim; Abdul Karim Nasim, Plaintiffs,
v.
WARDEN, MARYLAND HOUSE OF CORRECTION; Asbestos Contractor,
Maryland House of Correction; Unknown Prison Officials,
Maryland House of Correction, All Individually and in their
Official Capacity Under Color of State Law, Defendants-Appellees.
 No. 93-7263.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 2, 1994.
Decided Jan. 10, 1995.
Rehearing In Banc Granted, Opinion Vacated Feb. 8, 1995.
 
 ARGUED: Valerie A. Potenza, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant. Regina Hollins Lewis, Asst. Atty. Gen., Baltimore, MD, for appellees. ON BRIEF: Steven H. Goldblatt, John J. Hoeffner, Supervising Atty., Paul S. Ellis, Student Counsel, Appellate Litigation Clinical Program, Georgetown University Law Center, Washington, DC, for appellant. J. Joseph Curran, Jr., Atty. Gen., Baltimore, MD, for appellees.
 Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.
 Reversed by published opinion. Judge MOTZ wrote the majority opinion, in which Judge MURNAGHAN joined. Judge NIEMEYER wrote a dissenting opinion.
 OPINION
 MOTZ, Circuit Judge:
 
 
 1
 Ghulam Nasim appeals from the district court's dismissal of his complaint against the Warden of the Maryland House of Correction and certain other prison officials as untimely. Because it is not apparent from the face of Nasim's complaint that it was not filed within the prescribed statute of limitations period, we reverse.
 
 I.
 
 2
 Proceeding pro se, Nasim filed a complaint and application to proceed in forma pauperis in the District of Maryland on September 17, 1993, alleging violations of 42 U.S.C. Secs. 1983 and 1985. The complaint alleged that Nasim was confined at the Maryland House of Correction in Jessup, Maryland, from April, 1983 until November 15, 1989, during which time he was denied "needed treatment for stroke and spinal disk disease" and "suffered several attacks of relapse from stroke, lung disease, eye disease and skin lesions" because of asbestos exposure. The complaint further alleged that "[i]n first half of 1988 and second half of 1989" Nasim observed asbestos "falling from ceiling into [his] cage," that there was "no notice, information nor a wa[r]ning" as to the asbestos, and that, despite Nasim's complaints to "doctors, nurses and warden," prison officials failed to take any measures to "protect plaintiff and other inmates." Finally, the complaint alleged that Nasim "suffered permanent medical and psychological injuries by forcing to inhale cancer causing asbestos chemicals, maliciously and secretly dumped upon plaintiff during 1988-1989, without any warning or protection to the helpless prisoner in cage...." (all errors in original).
 
 
 3
 On October 5, 1993, without directing service upon the defendants, the district court granted Nasim leave to proceed in forma pauperis but then dismissed his complaint with prejudice as untimely.[1] Nasim filed a motion for reconsideration, in which he asserted that it was not until 1991, after reading relevant news articles and securing certain information under the Freedom of Information Act, that he realized that the asbestos was the probable cause of his injuries. The district court denied Nasim's motion for reconsideration, again without directing service and before receipt of any pleading from the defendants, and this appeal followed.
 
 II.
 
 4
 The district court dismissed Nasim's complaint pursuant to 28 U.S.C. Sec. 1915(d), which "allows the courts to dismiss an in forma pauperis complaint 'if satisfied that the action is frivolous or malicious.' " Denton v. Hernandez, --- U.S. ----, ----, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992) (quoting 28 U.S.C. Sec. 1915(d)). "[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). A district court's determination that a claim is "frivolous" is reviewed for abuse of discretion. Denton, --- U.S. at ----, 112 S.Ct. at 1734; see also White v. Gregory, 1 F.3d 267, 269 (4th Cir.1993); Brown v. Briscoe, 998 F.2d 201, 203 (4th Cir.1993) (per curiam). As we recently explained in Adams v. Rice, "it would defeat the purpose of Sec. 1915(d)," i.e., the prevention of "abuse of the judicial system by parties who bear none of the ordinary financial disincentives to filing meritless claims," to review Sec. 1915 dismissals "without substantial deference to the district courts." Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994).
 
 
 5
 Of course, this does not mean that a district court's discretion to grant a Sec. 1915(d) dismissal is unbridled, or that such discretion is not subject to appellate review. A complaint is properly dismissed pursuant to Sec. 1915(d) as factually frivolous only if its factual allegations are "fantastic," "delusional," or otherwise "clearly baseless," and as legally frivolous only if its claims are based on an "indisputably meritless legal theory." Neitzke, 490 U.S. at 327, 109 S.Ct. at 1833. Accordingly, the task of an appellate court in reviewing a Sec. 1915(d) dismissal on one, or both, of these grounds is to determine whether these standards were met.
 
 
 6
 This is illustrated by our recent analysis in Adams. There, the plaintiff, a prisoner who had been assigned to "single-cell housing," alleged that prison officials "retaliated" against him by (1) refusing to transfer him to protective custody, (2) denying him minimum custody status, (3) failing to schedule a parole eligibility date and hearing, and (4) barring his access to the grievance process. Adams, 40 F.3d at 75. The district court found that Adams' factual claims were "clearly baseless" and that his legal theory "lacked an arguable basis in law." Id. at 74. After noting the peculiar nature of such "retaliation" claims by prisoners, i.e., "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct" and "must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions," id. at 74, we addressed separately each basis for the Sec. 1915(d) dismissal. Because the "nonsensical" complaint in Adams "fail[ed] to allege how or why defendants retaliated against plaintiff," or why his single-cell housing "was inferior to or even different from protective custody," we concluded that the district court had not abused its discretion in finding that the complaint "was clearly baseless in fact." Id. at 74-75. Moreover, because the "retaliation" claim failed to implicate any constitutional right, we concluded that the district court had not abused its discretion in finding that the complaint " 'lack[ed] even an arguable basis in law.' " Id. at 75 (quoting Neitzke, 490 U.S. at 328, 109 S.Ct. at 1833).
 
 
 7
 The analysis employed in Adams is precisely what is required when an appellate court must determine whether a district judge abused his discretion in dismissing a complaint pursuant to Sec. 1915(d) because its factual allegations were "clearly baseless" or because it was based on an "indisputably meritless legal theory." Neither of these grounds, however, provides the basis for dismissal here; nor could they. Comparison between this case and Adams is instructive. First, Nasim's claim, unlike that in Adams, is not that prison officials "retaliated" against him,[2] but that they exposed him to a toxic substance--asbestos--that endangered his health. Moreover, the complaint here, again unlike that in Adams, contains specific allegations as to "how and why" defendants assertedly violated the plaintiff's rights, i.e., by permitting asbestos to "fall[ ] from ceiling into the Plaintiff's cage" in 1988 and 1989 without "notice, information ... wa[r]ning or protection provided to the Plaintiff." Although the factual allegations here are unlikely,[3] they are not "nonsensical." Compare Adams, 40 F.3d at 75. Furthermore, a claim that prison officials have purposely or with deliberate indifference exposed a prisoner to a toxic substance, unlike the claim of retaliation in Adams, does have a constitutional basis, i.e., the Eighth Amendment. See Helling v. McKinney, --- U.S. ----, ----, 113 S.Ct. 2475, 2481-82, 125 L.Ed.2d 22 (1993) (prisoner states "a cause of action under the Eighth Amendment" when alleging prison officials, "with deliberate indifference, exposed him" to toxic substance).
 
 
 8
 Thus, Nasim's complaint, unlike that in Adams, does not contain factual allegations that are on their face "nonsensical," "clearly baseless," or wholly conclusory. Nor does the complaint here, again unlike that in Adams, lack "even an arguable basis in law." Rather, Nasim's legal theory--that prison officials deliberately exposed him to toxic substances--has been specifically recognized by the Supreme Court as stating a cause of action under the Eighth Amendment. See Helling, --- U.S. at ----, 113 S.Ct. at 2481. Moreover, as noted above, the district court did not hold to the contrary. Unlike the district court in Adams, the court here did not dismiss the complaint because the factual allegations were "clearly baseless" or because the legal theory was without "an arguable basis in law." Rather, the district court dismissed Nasim's complaint solely because it concluded that the complaint "ha[d] been filed outside the statute of limitations." In sum, the complaint was dismissed, not because of some defect in the complaint itself, but because the court found there was a meritorious affirmative defense to the allegations in the complaint.
 
 
 9
 At one time it was unclear whether, pursuant to Sec. 1915(d), a district court could dismiss a complaint on the basis of a waivable affirmative defense,[4] before receiving any responsive pleading asserting this defense. See Anger v. Revco Drug Co., 791 F.2d 956, 958 (D.C.Cir.1986) (sua sponte Sec. 1915(d) dismissal because of lack of personal jurisdiction over defendants held improper); Sinwell v. Shapp, 536 F.2d 15, 19 (3d Cir.1976) (sua sponte Sec. 1915(d) dismissal because of improper venue held improper). This Court, however, led the way in concluding that under certain circumstances such a dismissal was proper. See Todd v. Baskerville, 712 F.2d 70 (4th Cir.1983), aff'g sub nom. Holsey v. Bass, 519 F.Supp. 395 (D.Md.1981).
 
 
 10
 In Holsey, the district court properly acknowledged that "[g]enerally, it is the duty of the defendant to plead affirmative defenses, and the court cannot raise such defenses sua sponte," but concluded "that given the competing policy considerations reflected in Sec. 1915(d) ... such defenses should be considered by a court sua sponte, in certain limited circumstances...." Holsey, 519 F.Supp. at 408-09 (citing Fed.R.Civ.P. 8(c)). On appeal, we specifically noted that the district court had "recognized that there was some dispute in the authorities on the power of the Court to consider affirmative defenses in ruling on dismissal for frivolousness under Sec. 1915(d) but concluded that such defenses could be considered 'in certain limited circumstances, such as those found in the case at bar.' " Todd, 712 F.2d at 74 (quoting Holsey, 519 F.Supp. at 409). Those "certain limited circumstances" were, we noted, a "specific" finding by the district court that the plaintiff's claims "were manifestly barred because it appeared on the face of the complaint and the court records that ... [principles of collateral estoppel and] the applicable statute of limitations bar[ ] ... the acts of which plaintiff complains." Id. As Judge Russell explained, "[u]nder those facts, we agree with the conclusions of the District Court and accordingly affirm the judgment of dismissal entered by it herein." Id. (emphasis added).
 
 
 11
 This Court has not had an occasion, other than Todd, to discuss in a published opinion a district court's sua sponte Sec. 1915(d) dismissal on affirmative defense grounds.[5] The conclusion reached in Todd, however, has in recent years been adopted by a number of other courts. For example, in Yellen v. Cooper, 828 F.2d 1471 (10th Cir.1987), the Tenth Circuit, relying on Todd, affirmed a sua sponte Sec. 1915(d) dismissal on waiver grounds. In doing so, the Yellen court carefully explained why such a dismissal does not violate the policy underlying Fed.R.Civ.P. 8(c):
 
 
 12
 [T]he policy underlying Rule 8(c), affording the plaintiff adequate notice of unanticipated defenses, is not violated when the plaintiff's in forma pauperis complaint itself sets out facts plainly demonstrating the affirmative defense.
 
 Id. at 1476 (emphasis added).[6]
 
 13
 Cognizant of the competing policy considerations inherent in Sec. 1915(d) and Rule 8(c), in recent years every federal appellate court to address the question appears to have similarly concluded that even if a complaint is neither factually nor legally baseless, a sua sponte Sec. 1915(d) dismissal can be justified if "it is clear from the face of a complaint filed in forma pauperis that the claims asserted are barred by the applicable statute of limitations...." Gartrell v. Gaylor, 981 F.2d 254, 256 (5th Cir.1993). Accordingly, our sister circuits have affirmed sua sponte Sec. 1915(d) dismissals on limitations grounds, but only when it was clear from the face of the complaint that limitations barred the claims. See, e.g., Moore v. McDonald, 30 F.3d 616, 620 (5th Cir.1994) (affirming dismissal); Slack v. Carpenter, 7 F.3d 418, 419-20 (5th Cir.1993) (same); Niccolai v. U.S. Bureau of Prisons, 4 F.3d 691, 692-93 (8th Cir.1993) (reversing dismissal); Gartrell v. Gaylor, 981 F.2d at 256-59 (same); Johnson v. Rodriguez, 943 F.2d 104, 107-108 (1st Cir.1991) (affirming dismissal), cert. denied, --- U.S. ----, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992); Street v. Vose, 936 F.2d 38, 39 (1st Cir.1991) (same), cert. denied, --- U.S.----, 112 S.Ct. 948, 117 L.Ed.2d 117 (1992); see also Yellen, 828 F.2d at 1476 (affirming dismissal when the "complaint on its face" demonstrated waiver); Clark v. Georgia Pardons & Paroles Bd., 915 F.2d 636, 640 (11th Cir.1990) (dicta). See generally Brownlee v. Conine, 957 F.2d 353 (7th Cir.1992) (Posner, J.).
 
 
 14
 Thus, prior to the filing of any defensive pleading asserting limitations, a district court only has discretion to grant a Sec. 1915(d) dismissal on that ground when the limitations bar is clear from the face of the complaint. See, e.g., Moore, 30 F.3d at 620; Slack, 7 F.3d at 419; Gartrell, 981 F.2d at 256; Yellen, 828 F.2d at 1476.[7] For this reason, appropriate review of such Sec. 1915(d) dismissals requires appellate courts to examine carefully both the complaint and the legal principles governing the limitations defense. See, e.g., Gartrell, 981 F.2d at 256-59; Street, 936 F.2d at 39-41. It is to that examination that we now turn.
 
 III.
 
 15
 The parties agree that the relevant statute of limitations is Maryland's general three-year statute of limitations for civil actions, see Wilson v. Garcia, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 1941-42, 85 L.Ed.2d 254 (1985). They also agree that this cause of action accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." See Cox v. Stanton, 529 F.2d 47, 50 (4th Cir.1975) (although "[t]he time limitation for civil rights actions, such as those under Sec. 1983, is borrowed from state law ... [t]he time of accrual of a civil rights action is a question of federal law").
 
 
 16
 A medical condition need not be diagnosed as such for an action on that condition to accrue, nor need a plaintiff fully understand the legal consequences of his or her condition. United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 359-60, 62 L.Ed.2d 259 (1979). Instead, a plaintiff need only be "aware of his injury and its probable cause." Id. at 118, 100 S.Ct. at 357; see also Muth v. United States, 1 F.3d 246, 249 (4th Cir.1993); Childers Oil Co. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir.1992) ("The 'discovery rule' tolls a statute of limitations until the plaintiff has, or ought to have, answers to two questions: Am I injured? Who injured me? At that point, the plaintiff has enough information to begin investigating his claims") (citing Kubrick, 444 U.S. at 122, 100 S.Ct. at 359); Gould v. United States Dep't of Health and Human Servs., 905 F.2d 738, 742 (4th Cir.1990) (en banc ), cert. denied, 498 U.S. 1025, 111 S.Ct. 673, 112 L.Ed.2d 666 (1991); Blanck v. McKeen, 707 F.2d 817, 819 (4th Cir.) (cause of action does not accrue until plaintiff exercising due diligence should have discovered factual basis for claim), cert. denied, 464 U.S. 916, 104 S.Ct. 279, 78 L.Ed.2d 258 (1983).
 
 
 17
 The district court understood that in order for Nasim's cause of action to have accrued, Nasim must have been aware of his injuries. However, it is unclear whether the court further understood that in order for the cause of action to have accrued, Nasim must also have been aware of the probable cause of those injuries. The court found that Nasim "at the latest, should have known of his injury when he personally observed the asbestos being removed in 1989" (emphasis added). The court did not make any finding as to when Nasim knew or should have known of the probable cause of his injuries. Thus, there is no finding by the district court that the complaint was not filed within three years from the date on which Nasim's claims accrued, i.e., within three years from the date on which he knew or should have known of the probable cause of his injury.
 
 
 18
 Nor is this clear from the face of the complaint. Of course, nowhere in his complaint did Nasim state when he became aware of the causal connection between asbestos and his injuries. He does allege that from 1983 to 1989 he was denied treatment for "stroke and spinal disk disease" and "suffered several attacks of relapse from stroke, lung disease, eye disease and skin lesions from asbestos exposure...." He further alleges that in the "first half of 1988 and second half of 1989," without "notice, information ... wa[r]ning or protection," asbestos fell "from ceiling into [his] cage," that he reported this to "doctors, nurses and warden" but nothing was done to protect him or the other prisoners, and that he "suffered permanent medical and psychological injuries" because he was forced "to inhale cancer causing asbestos chemicals, maliciously and secretly dumped upon [him] during 1988-1989, without any warning or protection...."
 
 
 19
 Thus, the complaint makes clear that by 1989, Nasim knew (1) he had been exposed to asbestos, (2) asbestos exposure posed a health risk, and (3) he was suffering from various health problems. To conclude from these bare facts, derived from his pro se complaint, that contemporaneously Nasim knew or should have known that the asbestos was also the probable cause of his health problems, or that he somehow failed to exercise the requisite due diligence in discovering the cause of those problems, assumes too much.[8]
 
 
 20
 Indeed, according to his complaint Nasim was in bad health prior to 1988, requiring treatment and medication for a stroke and "spinal disk disease." Thus, it would not have been unreasonable for Nasim initially to fail to recognize asbestos as the probable cause of his 1989 health problems. This is particularly true in view of the fact that asbestos injuries are typically latent in nature, not manifesting themselves until several years after exposure. See Taurel v. Central Gulf Lines, Inc., 947 F.2d 769, 771 (5th Cir.1991). In his motion for reconsideration, filed shortly after the complaint was dismissed, Nasim asserted that in 1989 he had "no knowledge whatsoever that asbestos chemicals caused cancer and cardio-vascular disease, like stroke or heart ailments" but instead "all the blame was laid on denial of medical treatment and conspiracy latter discovered from prison hospital files in 1987" (emphasis in original). It was assertedly not until receiving information pursuant to an October, 1991 Freedom of Information Act request and reviewing newspaper articles on the "adverse effects of exposure to asbestos" that Nasim had reason to know that "exposure to cancer-causing asbestos chemicals had enhanced plaintiff's relapse from stroke...." Of course, all of these assertions may ultimately prove to be false, but there is certainly nothing on the face of the complaint demonstrating as much. Because there is no indication on the face of the complaint as to when Nasim knew or should have known that asbestos was the probable cause of his injuries, his complaint should not have been sua sponte dismissed pursuant to Sec. 1915(d) as untimely.[9]
 
 
 21
 The case law supports this conclusion. In Portis v. United States, 483 F.2d 670 (4th Cir.1973), the plaintiff was treated in October, 1963 with neomycin and immediately suffered from severe renal toxicity. Because hearing loss is a possible side effect from the intramuscular administration of neomycin, the plaintiff's hearing was checked before she was discharged from the hospital, and although no damage was then evident, she was advised to have her hearing checked periodically thereafter. The plaintiff's hearing deteriorated, but none of the physicians who examined her diagnosed the cause of hearing loss. It was not until 1969 that a doctor finally diagnosed the plaintiff's problem as related to neomycin toxicity. The plaintiff brought suit in 1970, and this Court held that her claim had not accrued until 1969. The Court stated that "[e]ven if [the plaintiff] knew that there was a 'distinct possibility' of a causal relationship, ... [w]hat is important here is that no one, neither layman nor doctor, diagnosed the hearing difficulty as being caused, or even probably caused, by the 1963 malpractice until the year 1969." Id. at 673;[10] see also Childers Oil Co., 960 F.2d at 1272; Townley, 887 F.2d at 501.
 
 
 22
 In Kubrick, on the other hand, the Supreme Court held that the statute of limitations had run and that the plaintiff's complaint was therefore untimely. There, the plaintiff was treated for an infection with neomycin in 1968, and six weeks later he experienced a ringing sensation in his ears and some loss of hearing. In January, 1969, a physician informed the plaintiff that it was "highly possible" that his hearing loss was caused by the neomycin. In June, 1971, the plaintiff was told by another physician that the neomycin in fact caused his injury and should not have been administered. The plaintiff filed suit in 1972. The lower courts held that "even though a plaintiff is aware of his injury and of the defendant's responsibility for it, the statute of limitations does not run where the plaintiff shows that 'in the exercise of due diligence he did not know, nor should he have known, facts which would have alerted a reasonable person to the possibility that the treatment was improper.' " Kubrick, 444 U.S. at 116, 100 S.Ct. at 356 (quoting 581 F.2d 1092, 1097 (3d Cir.1978)) (emphasis added). The Supreme Court reversed, holding that, because the plaintiff was aware in 1969 that he had been injured and that the defendant's actions were the "probable cause" of his injury, his cause of action had accrued at that time, even if the plaintiff was then unaware of the legal implications of the defendant's actions, i.e., that those actions constituted medical malpractice. Id. at 122-24, 100 S.Ct. at 359-60. In so holding, the Court emphasized that the plaintiff "had been in possession of all the facts about the cause of his injury since January 1969." Id. at 123, 100 S.Ct. at 360. Here, in contrast, although Nasim was aware as early as 1989 that he had health problems and that he had been exposed to asbestos, he assertedly was not aware until 1991 that asbestos had "caused" his stroke "relapse" or "cancer and cardio-vascular disease."
 
 
 23
 Indeed, there is nothing in Nasim's complaint indicating when he knew that asbestos was the probable, or even the possible, cause of his various health problems. It was not until after the complaint was dismissed, when Nasim filed his motion for reconsideration, that the date on which he allegedly discovered that asbestos was the probable cause of his injuries--October, 1991--became apparent. A general awareness that asbestos poses certain unidentified health risks, as evidenced here by Nasim's complaints to prison officials, does not warrant the conclusion, at least at this preliminary stage, that Nasim "possessed sufficient information that he knew, or should have known," Townley, 887 F.2d at 501, that the asbestos was the probable cause of his health problems, or even that he had been "put on a duty to inquire," Childers Oil Co., 960 F.2d at 1272, about the cause of those problems, particularly in view of the fact that many of his health problems predated his exposure to asbestos. Indeed, given the convoluted nature of Nasim's complaint, any conclusions drawn from it about what he knew or should have known in 1988 and 1989, or about his efforts to discover the cause of his injuries, would be pure speculation, and a proper determination of the timeliness of Nasim's complaint requires a more fully developed record.[11]
 
 
 24
 Finally, we note that in the only case that we have found in which a similar fact situation has arisen in the context of a sua sponte Sec. 1915(d) dismissal, the Fifth Circuit reached the same conclusion. See Phillips v. Purdy, 617 F.2d 139 (5th Cir.1980). There, a prisoner filed a pro se complaint alleging that he had "contracted tuberculosis while confined in the [Dade County] jail because of inadequate treatment for his illness and improper and unsanitary jail conditions." Id. at 140. The district court sua sponte dismissed the complaint pursuant to Sec. 1915(d), finding it was barred by the relevant four-year limitations period because the prisoner had been transferred out of the Dade County Jail in November, 1973, more than four years prior to filing suit in December, 1978. Id. The prisoner asserted that he did not discover until 1976 the causal connection between conditions at the Dade County Jail and his contracting tuberculosis. Id. The Fifth Circuit reversed, reasoning:
 
 
 25
 We are unable to determine from the state of the record, since the case was dismissed without an evidentiary hearing, if the allegations in the complaint are true. Dismissal was improper under the circumstances. If the plaintiff is able to show a satisfactory reason why he did not learn until 1976 that his tuberculosis condition was brought about by his confinement in the Dade County Jail, the period of limitations may not have begun to run until that time.... We are likewise unable to decide without the benefit of the record of an evidentiary hearing that suit was properly dismissed under 28 U.S.C. Sec. 1915(d) pertaining to frivolous or malicious actions.
 
 
 26
 Id. at 140-41 (citations omitted).
 
 
 27
 The same rationale requires reversal here. The district court abused its discretion in sua sponte dismissing Nasim's complaint pursuant to Sec. 1915(d).
 
 
 28
 REVERSED.
 
 NIEMEYER, Circuit Judge, dissenting:
 
 29
 During the period from April 1983 to November 1989, Ghulam M. Nasim was incarcerated in the Maryland House of Correction in Jessup, Maryland. Nasim was a trained doctor who had practiced medicine and surgery in England for four years and thereafter in Towson, Maryland, for several years before his conviction. Nasim claims that during his incarceration he was exposed to asbestos which allegedly caused him physical harm (relapse from stroke, lung disease, eye disease, and skin lesions) and psychological harm.
 
 
 30
 In September 1993, almost four years after his transfer from the Maryland House of Correction to a federal prison, Nasim filed this action under 42 U.S.C. Sec. 1983 against the warden of the Maryland House of Correction and others involved in the asbestos removal for deliberately subjecting him to asbestos and causing him injury. He petitioned the district court to proceed in forma pauperis under 28 U.S.C. Sec. 1915. The district court concluded that Nasim was in fact indigent but decided, under 28 U.S.C. Sec. 1915(d), to dismiss the action without requiring service of the complaint on the defendants because the complaint on its face revealed that Nasim knew or should have known of his injury and its cause at the time the asbestos was being removed in 1989.* Therefore, the court concluded that Nasim's action, brought over three years later, was time-barred. On motion for reconsideration, Nasim alleged that he did not know that asbestos caused his injury until 1991 when he read articles in The Baltimore Sun about "hundreds of similar lawsuits filed in the Circuit Court for Baltimore City" which "substantiated that 'exposure to cancer-causing asbestos chemicals had enhanced plaintiff's relapse from stroke on February 6, 1989,' in addition to lung, skin, eye, and ear disease...." The district court denied the motion for reconsideration, concluding that the facts advanced by Nasim did not relieve him of the "burden of timely filing his action."
 
 
 31
 For the reasons that follow, I would affirm the district court's judgment.
 
 
 32
 Section 1915(d), which is part of the scheme permitting indigents to proceed in forma pauperis, provides that the district court "may dismiss the case ... if satisfied that the action is frivolous." 28 U.S.C. Sec. 1915(d) (emphasis added). The discretion given to the district court is a necessary adjunct to the privilege of proceeding without the payment of fees and costs, so that the privilege does not become an avenue for abuse of the judicial system. See Adams v. Rice, 40 F.3d 72 (4th Cir.1994). Thus, the district court serves as the gatekeeper of the in forma pauperis privilege, barring entry of frivolous cases, and we review the court's decisions only for an abuse of discretion. See Denton v. Hernandez, --- U.S. ----, ----, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); Adams, 40 F.3d at 74. A case is frivolous when the facts alleged are "clearly baseless" or when the legal theory is "indisputably meritless." Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 1833, 104 L.Ed.2d 338 (1989).
 
 
 33
 The district court in this case concluded that Nasim's complaint, accepting the allegations as true, is nevertheless baseless because on its face the complaint demonstrates that it was not timely filed. See Todd v. Baskerville, 712 F.2d 70 (4th Cir.1983) (affirming district court's dismissal under Sec. 1915(d) of actions which appeared on their face to be time-barred by statute of limitations). A careful review of the complaint, I submit, leads naturally to no other conclusion. Certainly, we cannot say that the district court abused its discretion.
 
 
 34
 In his complaint, Nasim alleged that during his incarceration at the Maryland House of Correction from April 1983 to November 1989 he "suffered several attacks of relapse from stroke, lung disease, eye disease, and skin lesion from asbestos exposure." He complained that in 1989 asbestos was falling into his "cage," an observation which he reported to doctors, nurses, the warden, and the acting commissioner of corrections. He alleged that he discovered from a prison official and another inmate that the warden had authorized an asbestos contractor to clean up the asbestos in the prison while inmates were "asleep and locked into their cages." He stated that neither prison officials nor the contractor attempted to warn or protect him, despite their recognition at the time that "desk officers claimed severe hea[l]th hazard[s] from asbestos inhalation and subsequently quit from the employment mainly [because] the warden refused to provide respirator[s] for their protection." He alleged that the contractor was later fired because it negligently scraped asbestos, failed to adopt adequate protective measures, and failed to warn prison officials. Nasim also alleged that no notice or warning was provided "to [him] nor to any other inmates who died or suffered severe respiratory or other medical problems during this illegal and malicious act of the defendants." Nasim claimed that he suffered not only physical injury but "psychological injuries." He demanded several million dollars in compensatory and punitive damages.
 
 
 35
 The complaint thus reveals that during the 1989 period Nasim (1) knew that asbestos was "dumped" into his prison cell and that he was exposed to it; (2) knew that asbestos was a health hazard and dangerous; (3) complained to nurses, doctors, and prison authorities about the exposure; (4) witnessed other persons who he believed were seriously injured by asbestos; and (5) suffered physical and psychological injuries. It is incomprehensible to me how we could not conclude from the facts contained in Nasim's complaint that Nasim "possessed sufficient information that he knew, or should have known, [in 1989] that he had been injured" by the asbestos. Townley v. Norfolk & Western Ry. Co., 887 F.2d 498, 500, 501 (4th Cir.1989) (holding that claims accrue when the plaintiff "knows both the existence and the cause of his injury"); Portis v. United States, 483 F.2d 670, 673 (4th Cir.1973) (cause of action accrues only when plaintiff knows or has reason to know both the injury and its cause); Cox v. Stanton, 529 F.2d 47, 50 (4th Cir.1975) (the time of accrual of a Sec. 1983 claim "is when plaintiff knows or has reason to know" the crucial information about his injury). That Nasim alleged that he complained to medical and prison personnel in 1989 reveals the knowledge requisite for finding that his claim accrued, particularly given that Nasim was a doctor. Also, the fact that Nasim alleged that he suffered psychological harm imputes to him some knowledge of asbestos injury at the time, since the kind of psychological harm he alleges can only arise from an awareness of the problem.
 
 
 36
 While I am fully satisfied that the district court ruled correctly, such a conclusion is not necessary for us to uphold the court's determination under the deferential standard of review that we are compelled to apply. To show proper deference to the district court, as Congress required us to do in enacting 28 U.S.C. Sec. 1915(d), we need only conclude that the district court did not abuse its discretion. See Adams, 40 F.3d at 74 (the purpose of Sec. 1915(d) would be defeated by reviewing Sec. 1915(d) dismissals without "substantial deference" to the district courts). I see no reason why we are not bound in this case by the standard articulated in Adams.
 
 
 37
 The majority opinion seeks to write around this standard of review by creating an exception for those situations where the plaintiff's complaint is dismissed because an affirmative defense appears on the face of the complaint as opposed to dismissals for simply failing to allege an element of the cause of action. Indeed, the majority uses this distinction to leap from "substantial deference" to "examin[ing] carefully" the district court's decision. There is, however, no basis in the law for this distinction. The test set forth in Sec. 1915(d) is aimed at any frivolous complaint and does not distinguish between complaints that are frivolous for different reasons. The statute provides that the district court may dismiss "frivolous" cases, and the Supreme Court has explained that "frivolous" means clearly baseless as to factual allegations or indisputably meritless as to legal theory. See 28 U.S.C. Sec. 1915(d); Neitzke, 490 U.S. at 327, 109 S.Ct. at 1833. No legal authority supports the proposition that this frivolousness standard only applies to elements of the cause of action. I submit that facts demonstrating that a plaintiff possessed sufficient knowledge to bring a complaint for four years before actually filing a claim, despite an established three-year statute of limitations, demand that that complaint be dismissed as frivolous. See Todd v. Baskerville, 712 F.2d at 74. All of the other circuits that have considered this issue since our decision in Todd have adopted this position, as recognized by the majority. See Maj. op. at 1475-76.
 
 
 38
 Moreover, to adopt the liberal standard espoused by the majority would frustrate the very purpose intended by Congress in giving district courts the discretion to sift out frivolous claims and would unnecessarily call upon the resources of two levels of the court system to dispose of cases which Congress believed could easily and expeditiously be resolved at the first.
 
 
 39
 I would affirm the judgment of the district court. Accordingly, I dissent.
 
 
 
 [1]
 Contrary to suggestions in the dissenting opinion, the district court did not (1) "conclude" that "the complaint on its face revealed that Nasim knew or should have known of his injury and its cause at the time asbestos was being removed in 1989;" Dissent at 1481 (emphasis in dissent), or (2) "conclude" that "on its face the complaint demonstrates that it was not timely filed." Id. at 1481. Indeed, nowhere in its opinion does the district court mention, let alone apply, what we have held to be the relevant legal standard, i.e., whether it was apparent from the face of the complaint that limitations barred the claims. For the reasons set forth within, we believe the district court could not have concluded this from the face of the complaint, which inter alia did not include any allegations as to Nasim's medical training. It is for this reason that our holding in Todd v. Baskerville, 712 F.2d 70 (4th Cir.1983), and its numerous progeny require reversal here
 
 
 [2]
 For this reason, of course, it does not merit the special "skepticism" such claims of retaliation are accorded
 
 
 [3]
 In Denton, the Supreme Court cautioned:
 An in forma pauperis complaint may not be dismissed ... simply because the court finds the plaintiff's allegations unlikely. Some improbable allegations might properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age-old insight that many allegations might be "strange, but true; for truth is always strange, Stranger than fiction."
 --- U.S. at ---- - ----, 112 S.Ct. at 1733-34 (quoting Lord Byron, Don Juan, canto XIV, stanza 101 (T. Steffan, E. Steffan & W. Pratt eds., 1977)).
 
 
 [4]
 See Peterson v. Air Line Pilots Ass'n, Int'l, 759 F.2d 1161, 1164 (4th Cir.) ("It is well settled that the defense of limitations is waived unless asserted by way of answer or motion"), cert. denied, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985)
 
 
 [5]
 In White v. Gregory, one reason for the magistrate judge's recommendation that the complaint be dismissed under Sec. 1915(d) was that the defendants were public officials absolutely immune from suit. 1 F.3d at 268-69. We affirmed, however, on a different ground. Id. at 269
 
 
 [6]
 This rule is consistent with the well-established principle that an affirmative defense can also provide the basis for dismissal under Fed.R.Civ.P. 12(b)(6), "but only if [that defense] clearly appears on the face of the complaint." Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir.1993) (and authorities cited therein)
 
 
 [7]
 A few courts have even held that the review of a district court order dismissing a complaint pursuant to Sec. 1915(d) on affirmative defense grounds is "plenary," Johnson v. Rodriguez, 943 F.2d at 107, or "de novo." Hickey v. Irving Indep. School Dist., 976 F.2d 980, 982 (5th Cir.1992). No matter how the standard is articulated, appellate review of sua sponte Sec. 1915(d) dismissals on limitations grounds has been similarly thorough. The Supreme Court has never considered the question. However, the scrutiny accorded such dismissals by the courts of appeals is entirely consistent with the review conducted by the Supreme Court when reviewing a sua sponte Sec. 1915(d) dismissal similarly based solely on the application of extrinsic legal principles to the complaint. See Boag v. MacDougall, 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982) (per curiam) (determination that complaint could be dismissed pursuant to Sec. 1915(d) because it did not "state a claim upon which relief can be granted" was characterized not as an abuse of discretion but as "erroneous as a matter of law"); see also Denton, --- U.S. at ----, 112 S.Ct. at 1734. The dissent seems to recognize that an affirmative defense must be apparent from the "face of the complaint" in order to justify a Sec. 1915(d) dismissal and appears to agree that Todd contains the correct legal analysis. Yet, inexplicably the dissent asserts there is no "basis in the law" for our conclusion that a district court's sua sponte Sec. 1915(d) dismissal on affirmative defense grounds is to be examined carefully. In fact, in Todd and its numerous progeny, which are cited and discussed above, appellate courts have uniformly subjected such dismissals to careful examination
 
 
 [8]
 The Supreme Court made it clear in Boag that, when making a determination under Sec. 1915(d), as in other situations, a pro se complaint must be construed "liberally." 454 U.S. at 365, 102 S.Ct. at 701. See also White v. White, 886 F.2d 721, 722-23 (4th Cir.1989) (pro se complaint "must" be held to "less stringent standards than pleadings drafted by attorneys and must [be] read ... liberally"); Boyce v. Alizaduh, 595 F.2d 948, 951 (4th Cir.1979) (authority to dismiss under Sec. 1915(d) is "limited in a pro se case, such as here, by the rule ... that 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed ... if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' ") (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976))
 
 
 [9]
 Although appellees contend that such a result would be inconsistent with the purpose of the statute of limitations to protect defendants from stale claims, there is no indication that Nasim had reason to suspect asbestos as the probable cause of his injuries any time prior to 1991 or that he failed to exercise reasonable diligence in making that discovery. Indeed, the purpose of the "discovery" rule is to afford plaintiffs a reasonable opportunity to discover the critical facts with respect to an injury and its cause. Townley v. Norfolk & Western Ry. Co., 887 F.2d 498, 501 (4th Cir.1989); see also Urie v. Thompson, 337 U.S. 163, 169-70, 69 S.Ct. 1018, 1024-25, 93 L.Ed. 1282 (1949). Moreover, the result reached here appears to be the only one consistent with "Congress' over-arching goal in enacting the in forma pauperis statute: 'to assure equality of consideration for all litigants.' " Neitzke, 490 U.S. at 329, 109 S.Ct. at 1834 (quoting Coppedge v. United States, 369 U.S. 438, 447, 82 S.Ct. 917, 922, 8 L.Ed.2d 21 (1962))
 
 
 [10]
 Significantly, the district court in Portis had apparently based its holding that limitations had run, at least in part, on the fact that the infant plaintiff's mother "must have known and understood that a hearing injury could result" from treatment with neomycin because she was "a graduate nurse and such a possible effect ... is 'a medical hornbook diagnosis.' " Id. at 672 n. 6. On appeal, we reversed, finding this fact of no consequence. Id. Similarly, that Nasim was apparently trained as a physician in India is of little consequence here, particularly in view of the fact that his medical training was nowhere alleged in his complaint
 
 
 [11]
 Although it is now clear that a plaintiff can state a claim under the Eighth Amendment by alleging that prison officials have, with deliberate indifference, exposed her to toxic substances that will likely pose an unreasonable risk to her future health, without alleging any present injury, see Helling, --- U.S. at ----, 113 S.Ct. at 2481, neither the court below nor the parties here have addressed the issue of whether such a claim, if alleged, could be time-barred by the applicable statute of limitations. Generally we do not address arguments not raised before or relied upon by the district court, Liberty Corp. v. NCNB Nat'l Bank, 984 F.2d 1383, 1390 (4th Cir.1993), let alone those not even raised by the parties on appeal. Accordingly, we do not reach that issue here
 
 
 *
 In particular, the district court referred to the second paragraph of Nasim's complaint where Nasim alleged:
 Plaintiff and other inmate witnessed and observed on several occasions when Asbestos crew secretly entered into the F-Building during night hours and neither prison staff nor the contractor gave any protection, warning or respirator to the Plaintiff or any other inmate at the F-Building during this entire period [in 1989].