**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 6, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

FRED LLOYD HOLDER,

    Defendant - Appellant.

No. 03-7123

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. CIV-02-556-S)**

---

Gordon Cecil, Assistant United States Attorney, (Sheldon J. Sperling, United States Attorney and Dennis A. Fries, Assistant United States Attorney, with him on the brief), Muskogee, Oklahoma, for Plaintiff-Appellee.

Stephen Jones of Jones, Otjen, Davis & Gungoll, Enid, Oklahoma, for Defendant-Appellant.

---

Before **KELLY**, **HOLLOWAY** and **LUCERO**, Circuit Judges.

---

**HOLLOWAY**, Circuit Judge.

---

    Fred Lloyd Holder brings this appeal from an order of the district court denying, without a hearing, his motion for relief under 28 U.S.C. § 2255. Holder had earlier been

indicted under 18 U.S.C. §§ 1111(a) and 1114(1) for murder in the first degree of David Pickens while Pickens was assisting Kenneth Swift, an employee of the federal government, in performance of his official duties, and for forcibly intimidating and interfering with Swift in the performance of his duties in violation of 18 U.S.C. § 111. He was convicted by the jury on the first count of the lesser charge of murder in the second degree. Holder was also convicted on the second count. He was later sentenced to 168 months' imprisonment on the first count and 120 months' imprisonment on the second count, to be served concurrently. He was also sentenced to a term of supervised release to follow the terms of imprisonment and ordered to pay restitution of $5,980.00 and special assessments totaling $200.00.

This court heard and decided a direct appeal from Mr. Holder's convictions, *United States v. Holder*, 256 F.3d 959 (10th Cir. 2001). The facts of the case are set out in that prior opinion with thoroughness and clarity and need not be repeated. We will instead offer an abbreviated account to put in context the issue raised in this appeal and on which we earlier granted a certificate of appealability – alleged ineffectiveness of trial counsel.

**I**

Appellant Holder, who will sometimes be referred to as the defendant, is a cattle rancher in Choctaw County in southeastern Oklahoma. Land next to that of his family was purchased by a group of duck hunters who had formed an entity called BC Partners.

This plot was often referred to at trial as the BC Wetlands property, and it was burdened by an easement, granted by a previous owner, in favor of the United States. As far as our appellate record reveals, the United States Department of Agriculture (USDA) purchased the easement from a previous owner as part of a wetlands conservation program called the WRP. In this WRP program, willing owners of suitable tracts received (again, according to the trial testimony included in our record) the full value of the land in exchange for an easement that gave the Natural Resource Conservation Service (NRCS), acting for its parent agency, the USDA, substantial control of the property in order to preserve and enhance the land's value as a wetland area. This use of the property was compatible with the BC Partners plans, which apparently were to have their own hunting preserve. Before purchasing the property, the partners met with Ken Swift of the NRCS and were informed of the conditions that the agency insisted upon under the Government's easement.

These conditions included keeping livestock out of the area to preserve its value as wildlife habitat. The Holders' cattle, possibly acting on patterns established in the past, frequently trespassed on the property from the beginning, and the BC Partners were informed that under the terms of the easement it was their responsibility to prevent this ongoing problem. Accordingly, on purchase of the property a member of the group met with Defendant Holder in an attempt to obtain his assistance in keeping his cattle off the land. Several more informal contacts were made, but the partners felt that Holder was not taking action to match his promises. Holder, on the other hand, testified that he was

trying to repair existing fences and to put in new fencing where necessary; he said that the problem persisted mainly because someone else was cutting fences and opening a gate. In any event, after some months the cattle were still finding their way onto the Wetlands property, damaging it, and tension was building between the two sides.

## II

The homicide on which the instant murder charge was based occurred on September 23, 1999, near the boundary between the two properties. Holder testified that he had been hunting wild hogs with one David Smith that morning. They were on horseback, and Holder had a shotgun in a scabbard on his mount. It is undisputed that the scabbard did not hold the shotgun securely, and Holder testified that at some point that morning he had removed the gun from it. He was holding the gun in his hands when he and Smith encountered Pickens and Swift.

Pickens and Swift had been setting out flags to mark the line for a new fence to be built to secure the Wetlands property. They had used an all terrain vehicle, a "four wheeler," but were on foot at the time they saw Holder and Smith. When he recognized Holder, Pickens told Swift to stay behind because there might be trouble. Pickens then removed his belt, which held a holstered pistol, moved the pistol to the waistband at his back, and put the belt back on. He then approached Holder and Smith. Swift testified that he couldn't hear the first part of the brief conversation that ensued, but as he drew nearer, he saw Pickens reach for the pistol he had tucked into his waistband and heard

Holder say, "I told you never pull a gun on me again." Holder fired his shotgun one time, and Pickens fell back to the ground, mortally wounded.

We have omitted much of the background evidence, some of which favors each side, as unnecessary for our review in light of the posture of this appeal.

## III

Holder presses a single contention on appeal: that the district court erred in denying his § 2255 motion without an evidentiary hearing on the underlying claim of ineffectiveness of trial counsel. The § 2255 motion filed in the district court asserted four grounds for relief, each based on the allegation that Holder had been denied the effective assistance of counsel at trial. All four of these allegations are repeated in Holder's appellate brief. First, defendant Holder alleged that trial counsel failed in their duty to give effective assistance by failing to call David Smith to testify. Second, he alleged that counsel's closing argument was so "nonsensical" and "jumbled" that it was "impossible to follow." Third, he averred that counsel's performance in the pretrial stage was deficient because counsel failed to investigate the case thoroughly, failed to raise a jurisdictional issue, failed to appeal the denial of bail by the federal judge (after bail had been allowed by the state court, where charges had first been brought), filed only one pretrial motion, failed to raise a venue issue, spent insufficient time preparing defendant to testify at trial, failed to obtain "necessary" expert witnesses, did not vigorously challenge the government's key witness, and failed to file a motion for new trial. The

fourth contention was one of cumulative error.

A claim of ineffective assistance of counsel presents a mixed question of fact and law, which we review *de novo*. *Williamson v. Ward*, 110 F.3d 1508, 1513 (10th Cir. 1997). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Williamson*, 110 F.3d at 1513-14 (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986)). As the Supreme Court established in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed on this claim, Defendant Holder must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced thereby, which means that he must show a reasonable probability that the outcome of the trial would have been more favorable to him, absent the errors of trial counsel. *See, e.g., Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). In evaluating claims of this nature, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.

As in the recent case of *United States v. Sanders*, 372 F.3d 1183 (10th Cir. 2004), we note with concern that the district court in this case relied on *Plaskett v. Page*, 439 F.2d 770 (10th Cir. 1971), for the proposition that a petitioner has no ineffective

assistance of counsel claim when he was represented at trial by his privately retained counsel. The reasoning of *Plaskett* was rejected in *Cuyler v. Sullivan*, 446 U.S. 335, 344-45 (1980), as we recognized in *Barnett v. Alford*, 635 F.2d 820, 820 (10th Cir. 1981).

The contention argued most vigorously here is that Holder's defense was prejudiced by the failure to call David Smith as a defense witness. The other two men present at the time of the shooting, Holder and Swift, testified and gave conflicting accounts on key points, including most significantly whether the victim had managed to remove his pistol and bring it around from his back before Holder fired. Smith testified before the grand jury that Holder had fired in self-defense because Pickens had removed the pistol from the waist band and appeared to be bringing it into position to fire. He stated more than once, under oath, that if Holder had not shot first, he believed that Pickens would have shot Holder.

The affidavit of Mike Brazeal, employed as an investigation specialist with Forensic Consulting Associates of Springfield, Missouri, states that in September 2002 he contacted both attorneys who had represented Mr. Holder at trial. In response to the investigator's inquiry whether they would have done anything differently, given the outcome of the trial, each said that in hindsight they should have called David Smith, the only witness to the shooting who did not testify. And appellate counsel for Holder points out that the attorney for the Government told the jury in closing argument that the case turned on whether they believed Swift or Holder.

The district judge said that decisions whether to call a particular witness rest within the sound discretion of trial counsel, citing *Jackson v. Shanks*, 143 F.3d 1313, 1320 (10th Cir. 1998). However, we there noted an important limitation to the scope of trial counsel's discretion: it is the *informed, tactical* decision that is within counsel's discretion. And while there is, of course, a presumption that counsel was effective, that presumption cannot be used to deflect all serious allegations of ineffectiveness, or else the constitutional guarantee would be eviscerated. We should not attempt to state general rules regarding when the presumption of effectiveness should prevail and when it should give way.

## IV

We conclude that Defendant Holder has carried his burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689. The potential for the testimony of Smith to have tipped the balance in favor of a finding of self-defense is apparent under the circumstances here, where his testimony, if believed, would have bolstered that of the defendant and refuted that of the prosecution's witness, Swift. Moreover, the critical importance of possible testimony by Smith is magnified by the fact that in closing argument, Government counsel said:

> Ladies and gentlemen, this case really does boil down to this. Do you believe Ken Swift or do you believe the defendant?
> If you believe Ken Swift, then the defendant is guilty because the gun never came out and the defendant shot him in cold blood.

IV Aplt. App. at 1156-57. The prosecutor's closing argument repeated the theme twice more. *Id.* at 1160, 1166. Further, the jurors knew of Mr. Smith's presence at the scene, as it had been mentioned by both Swift and Holder, and knew that he had been with Mr. Holder. Therefore, his absence from trial surely must have been noticed.

Our record offers no explanation for counsel's decision not to call Mr. Smith. There may have been sound, tactical reasons not revealed by the record. But on this record we cannot rule out other possibilities, such as that there may have been no reason at all but instead a failure to investigate which left counsel unfamiliar with Smith's version of the events, or a failure to secure Smith's appearance at trial. Such a crucial decision must be explained before a court can draw any conclusions on the ineffectiveness claim.

Our disposition is compelled, we conclude, by the totality of the circumstances before us. The crucial issue in the trial of the murder charge was the credibility of conflicting testimony of two witnesses and the weighing of their testimony in the circumstances of the tragic confrontation resulting in the death of Mr. Pickens. We are convinced that the circumstances made critical the holding of an evidentiary hearing to develop the thoroughness of trial counsel's investigation, preparation, and the basis of the decision about calling Mr. Smith as a witness. All of these factors called for an evidentiary hearing which must result in reconsideration of the validity of both convictions. Accordingly, the order denying the § 2255 motion is REVERSED and the

cause is REMANDED for an evidentiary hearing and reconsideration of the § 2255 motion.

IT IS SO ORDERED.