**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 5, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

LEO D. GRAHAM, JR.

      Defendant-Appellant.

No. 04-3144

(D. Kansas)

(D.C. Nos. 99-CR-10023-02-JTM &
01-CV-03316-JTM)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

Leo D. Graham, Jr. pleaded guilty in federal district court to one count of

armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). He had been

serving a state sentence of imprisonment when the federal government obtained

the original indictment and lodged a detainer against him. The Interstate

Agreement on Detainers Act ("IADA") therefore governed Mr. Graham's delivery

to federal court and disposition of the pending charges. *See* 18 U.S.C. App. 2, §§

2, 9. The IADA "creates uniform procedures for lodging and executing a

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

detainer, *i.e.*, a legal order that requires a State in which an individual is currently imprisoned to hold the individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001).

Mr. Graham contends that his appointed counsel did not investigate or explain certain IADA violations pertinent to his case before advising him to plead guilty. Mr. Graham filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence. He alleged that his counsel's ineffective assistance resulted in an involuntary guilty plea. The district court denied the motion for relief, and on appeal, this court granted a certificate of appealability. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253, we reverse and remand to the district court for an evidentiary hearing on his claim of ineffective assistance of counsel.

## I. BACKGROUND

A.    Overview of the IADA

The IADA involves 48 states, the federal government, and the District of Columbia. "The rights created by the IADA are statutory, not fundamental or constitutional in nature." *Yellen v. Cooper*, 828 F.2d 1471, 1474 (10th Cir. 1987). These protections "are designed to facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner

in another jurisdiction." *Id.* (quotation marks omitted). The IADA "encourage[s] the expeditious and orderly disposition . . . of charges [from other jurisdictions] and the determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." 18 U.S.C. App. 2, § 2, Art. 1. It prescribes certain procedures to follow when a prisoner is serving a term of imprisonment in a "Sending State," and criminal charges are filed against the prisoner in another jurisdiction (the "Receiving State"). *See id.*, Art. II(b)-(c).

Relevant to this appeal are two IADA provisions. First, Article III of the IADA provides that if the receiving state lodges a detainer against a prisoner in the sending state, the prisoner must be provided a copy of this detainer and advised of his IADA right to be brought to trial in the receiving state within 180 days. Second, the IADA prevents any receiving state from "shuttling" a prisoner between its custody and the sending state. A receiving state must complete a trial on all pending charges against the prisoner before returning him to the sending state's custody; otherwise, the court in the receiving state must dismiss the pending charges with prejudice. *Id.*, Art. IV(e).

Where, as here, the receiving state is the federal government, special provisions apply. A federal court may return a prisoner to the custody of the sending state prior to the federal trial "pursuant to an order" and "after reasonable notice to the prisoner and the United States and an opportunity for a hearing." *Id.*

-3-

§ 9(2). Following a hearing, the federal court may dismiss the pending charge with or *without* prejudice, after considering (1) "the seriousness of the offense," (2) "the facts and circumstances of the case which led to the dismissal," and (3) "the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." *Id.* § 9(1).

B.     Mr. Graham's case history

On March 3, 1999, the federal government obtained the original indictment against Mr. Graham and three co-defendants for armed bank robbery and related charges. At that time, Mr. Graham was serving a 120-month sentence with the Kansas Department of Corrections ("KDOC"). On March 10, the United States Marshal's Service lodged a non-IADA detainer against Mr. Graham with the KDOC; the detainer was captioned as a "Detainer Against Unsentenced Prisoner." According to Mr. Graham, he was not given a copy of the federal detainer, though he became aware of it when the KDOC entered it on his inmate record.

The government subsequently requested a writ of habeas corpus ad prosequendum to take temporary custody of Mr. Graham. The United States District Court for the District of Kansas issued the writ. On March 31, Mr. Graham was transferred to federal custody from a KDOC facility, and he was arraigned on April 2. Counsel was appointed and appeared with him at the arraignment. The district court detained Mr. Graham pending federal trial.

-4-

On May 3, 1999, the government filed a motion to dismiss Mr. Graham's indictment without prejudice. Two of Mr. Graham's co-defendants were not yet available for trial because of trial or sentencing proceedings in other jurisdictions. The government sought dismissal to avoid multiple trials, expecting the other two defendants to be available within the next few weeks. The government did not serve Mr. Graham or his counsel with a copy of the motion, and the district court did not hold a hearing on the motion. The next day, the court dismissed the indictment without prejudice, and Mr. Graham was returned to KDOC custody on May 19. According to Mr. Graham, the government did not remove the federal detainer during his return to KDOC custody.

On January 12, 2000, the government filed a superceding indictment against Mr. Graham and his co-defendants. The district court again issued a writ of habeas corpus ad prosequendum. Mr. Graham was transferred to federal custody on February 9 and arraigned. Counsel representing Mr. Graham on the original indictment also represented him on the superceding indictment. The district court detained Mr. Graham pending his federal trial. Through counsel he filed several pre-trial motions, including a motion to sever trial from his co-defendants. The district court granted the motion to sever his trial.

On July 5, 2000, Mr. Graham pleaded guilty to one count of armed bank robbery as charged in the superceding indictment. Under the plea agreement, the

remaining count was dismissed. Prior to sentencing, Mr. Graham sent a letter to the district court stating that he had not been satisfied with his attorney's failure to investigate and explain to him his IADA rights. Mr. Graham pointed out that he had been "under sentence" in KDOC custody when the federal government incorrectly lodged its non-IADA detainer against him. The record does not show that the district court responded to Mr. Graham's letter. On October 4, 2000, the court sentenced Mr. Graham to 188 months' imprisonment, followed by 36 months' supervised release. He was returned to KDOC custody on October 18, and the federal detainer against him was cancelled.

Mr. Graham did not directly appeal his conviction or sentence. On July 27, 2001, he timely filed a § 2255 habeas motion to vacate, set aside, or correct his sentence. Mr. Graham argued that (1) his trial counsel's ineffective assistance had resulted in an involuntary guilty plea; and (2) he had been denied effective assistance of counsel at a critical stage of the proceedings, when the district court dismissed his original indictment without prejudice on May 4, 1999. The district court denied habeas relief in November 2001. It concluded that a violation of the IADA was not a constitutional violation, and "[a]bsent special circumstances, violations of the IADA are not a basis for collateral attack on a conviction." Rec. doc. 202, at 1 (Order, filed Nov. 20, 2001) (citing *Greathouse v. United States*, 655 F.2d 1032, 1034 (10th Cir. 1981)). The court did not address Mr. Graham's

Sixth Amendment claims.

Mr. Graham subsequently filed a motion to amend the judgment and to make additional findings of fact. In April 2004, the district court again denied his claims. The court, however, briefly analyzed the ineffective-assistance claim. It stated: "The court has reviewed the record, transcripts, and pleadings, and finds that defendant received effective assistance of counsel as defined in *Strickland v. Washington*, 466 U.S. 668 (1984)." Rec. doc. 216, at 6 (Mem. and Order, filed April 22, 2004).

Mr. Graham timely appealed the denial of habeas relief. On July 29, 2005, this court appointed counsel for him and granted a certificate of appealability ("COA") on two issues:

(1)     [Mr. Graham's] contention that his guilty plea was involuntary because his counsel rendered ineffective assistance of counsel in failing to advise him that his rights under the IADA had been violated; [and]

(2)     [Mr. Graham's] contention that he was denied the assistance of counsel at a critical stage of the proceeding–namely, the dismissal of the original indictment without prejudice.

Order, filed July 29, 2005; *see also* 28 U.S.C. § 2253(c)(2) (providing that a appellate court may issue a COA "if the applicant has made a substantial showing of the denial of a constitutional right"). As to Mr. Graham's first claim, he asks us to reverse the district court's decision denying habeas relief and to vacate his sentence based on the involuntariness of his plea agreement. In the alternative,

-7-

Mr. Graham seeks a remand to the district court for an evidentiary hearing. Under his second claim, he contends he is entitled to a more lenient standard of review because the ineffective assistance of counsel implicated a critical stage of the district court's proceedings.

## II.  DISCUSSION

A.    <u>Standard of review</u>

We review Mr. Graham's claim of ineffective assistance of counsel de novo. *United States v. Holder*, 410 F.3d 651, 654 (10th Cir. 2005). "When reviewing a district court's denial of a § 2255 petition, we review questions of law de novo and questions of fact for clear error." *United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004) (citation omitted).

A petitioner for habeas relief is entitled to an evidentiary hearing on his § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that [he] is entitled to no relief." 28 U.S.C. § 2255. In determining whether to remand Mr. Graham's case for an evidentiary hearing, we first evaluate whether his allegations, if proven, would entitle him to relief. *United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996). If so, we "review the district court's refusal to hold an evidentiary hearing for an abuse of discretion." *Harms*, 371 F.3d at 1210.

B.      Involuntariness of plea agreement

Mr. Graham alleges that, despite his repeated requests, his defense counsel did not investigate IADA violations and their possible impact on the validity of his superceding indictment before advising him to plead guilty. He contends that he was denied his Sixth Amendment right to an effective assistance of counsel, resulting in a coerced guilty plea. According to Mr. Graham, had he been aware of the IADA violations, he would not have pleaded guilty to armed bank robbery and instead would have pursued dismissal of the superceding indictment with prejudice. He contends that the plea agreement did not provide significantly less prison time than a trial conviction.

We first address the government's contentions that Mr. Graham has waived any claims of statutory IADA violations because he pleaded guilty and did not file a direct appeal. It is true that "a prisoner may waive his rights under the IADA" by demonstrating that he "has affirmatively requested treatment in a manner contrary to" the IADA. *Yellen*, 829 F.2d at 1474. While Mr. Graham's two claims before us are predicated on the violation of his statutory IADA rights, each claim alleges a *separate* violation under the Sixth Amendment. That Mr. Graham's guilty plea may have foreclosed any statutory claims of IADA violations does not affect our review of his independent constitutional claims. We also reject the government's argument that Mr. Graham is precluded from

filing a § 2255 motion because he did not file a direct appeal. "[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

We therefore review Mr. Graham's allegation–that his counsel's ineffective assistance made his guilty plea involuntary–under the familiar framework of *Strickland,* 466 U.S. at 686. "[T]he two-part test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). This approach is also consistent with how other appellate courts have analyzed prisoners' § 2255 ineffective-assistance challenges based on IADA violations. *See, e.g.*, *Baxter v. United States*, 966 F.2d 387, 389 (8th Cir. 1992) (applying the *Strickland* test to a prisoner's § 2255 Sixth Amendment claim that his trial counsel improperly "advised him to plead guilty when [the counsel] should have sought dismissal of the charges under the IADA"); *United States v. Espinoza*, 866 F.2d 1067, 1070 (9th Cir. 1988) (reviewing under *Strickland* a prisoner's § 2255 claim of ineffective assistance of counsel based on his trial counsel's failure to raise the government's violation of the IADA).

Mr. Graham must show that his counsel's performance was deficient, and this deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. Under the first prong, he must demonstrate that his counsel's representation "fell

below an objective standard of reasonableness." *Id.* at 688. Mr. Graham must establish that his counsel's advice to plead guilty was outside "the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Under the prejudice prong, he "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59. This prejudice inquiry resembles our inquiry for claims of ineffective assistance from trial convictions. The assessment of an alleged "failure to investigate or discover exculpatory evidence" or to "advise the defendant of a potential affirmative defense" depends largely on whether the evidence or defense "likely would have changed the outcome of a trial." *Id.*

Mr. Graham's allegations raise important questions about the effectiveness of his counsel in advising him to plead guilty. The record establishes that (1) the government incorrectly filed a non-IADA detainer against Mr. Graham, and (2) under Article IV and Section 9 of the IADA, he and his counsel should have received notice and a hearing prior to the dismissal of his original indictment without prejudice. The court also did not consider the factors under Section 9(1) before it dismissed the original indictment without prejudice.

The district court neither held an evidentiary hearing nor made any factual findings before it denied the Sixth Amendment claims. Consequently, the record

does not reveal whether Mr. Graham's counsel ever investigated possible IADA violations or discussed IADA issues with him prior to the plea agreement. In further support of his claim, Mr. Graham points out a recent decision in which the United States District Court for the District of Kansas dismissed an indictment with prejudice after the government mistakenly filed an "unsentenced" detainer against a state prisoner who was in fact covered by the IADA. *See Queen v. Farden*, 2005 WL 1941693, at *2-3 (D. Kan. Aug. 12, 2005).

Given the seriousness of Mr. Graham's allegations and the undeveloped factual record, we find the Sixth Circuit's decision in *Kowalak v. United States*, 645 F.3d 534 (6th Cir. 1981) relevant here. In *Kowalak*, a pro se prisoner "alleged that his defense counsel did not inform him of his rights under IAD[A] and advised [him] that he could fulfill his wish to remain in federal custody by pleading guilty to the federal charges against him." *Id.* at 537. The circuit found it "clear that his former counsel was unaware of or chose to ignore the provisions of the IAD[A]," and the court was especially concerned about the allegations because they were "uncontradicted by the scant record." *Id.* The Sixth Circuit concluded that the district court had abused its discretion in not holding an evidentiary hearing. "A Sixth Amendment claim grounded on such a credible allegation . . . must be explored at a hearing which gives the defendant an adequate opportunity to shoulder his burden on showing the inadequacy of his

counsel." *Id.* at 537-38.

We conclude that Mr. Graham's record before the district court did not "conclusively" show that he was entitled to no relief. Therefore, the district court abused its discretion when it denied the § 2255 motion without holding an evidentiary hearing. We remand to the district court for an evidentiary hearing where Mr. Graham will have the burden to prove that his counsel's ineffective assistance rendered his guilty plea involuntary.

C.    IADA hearing as a "critical stage"

Mr. Graham also contends that the dismissal of his original indictment without prejudice constituted a "critical stage" in his criminal prosecution. If the dismissal proceeding was a critical stage, Mr. Graham need not demonstrate prejudice from the absence of his counsel at the proceeding. *See United States v. Cronic*, 466 U.S. 648, 659 (1984) ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of the trial."). A stage in criminal proceedings is "critical" when "circumstances . . . are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658. Examples of critical stages include arraignment, *Hamilton v. Alabama*, 368 U.S. 53, 55 (1961), post-indictment pre-trial lineup, *United States v. Wade*, 388 U.S. 218, 236-37 (1967), or cross-examination, *Davis v. Alaska*, 415 U.S. 308, 318

(1974). A pre-trial proceeding is a critical stage if it "protect[s] the fairness of the trial itself," *Schneckloth v. Bustamonte*, 412 U.S. 218, 239 (1973), or could affect the defendant's substantial rights, *Mempha v. Rhay*, 389 U.S. 128, 134 (1967).

"[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Cronic*, 466 U.S. at 658. "Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated." *Id.* Our circuit's description of the IADA, however, indicates that a hearing preceding dismissal of an indictment without prejudice is not a critical stage. As we noted earlier, "the protections of the IADA are not founded on constitutional rights, *or the preservation of a fair trial*, but are designed to facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner in another jurisdiction." *Yellen*, 828 F.2d at 1474 (emphasis added). Moreover, Mr. Graham's counsel in this action acknowledges an inability "to find any decisions specifically holding that a government motion to dismiss an indictment without prejudice is a 'critical stage' in a criminal prosecution." Aplt's Supp. Op. Brief at 17. Thus, we decline to characterize as a critical stage the dismissal without prejudice of Mr. Graham's original indictment.

## III. CONCLUSION

Accordingly, we REVERSE the district court's denial of Mr. Graham's § 2255 motion for relief, and we REMAND for an evidentiary hearing to determine whether the alleged ineffective assistance of counsel made his guilty plea involuntary. We also GRANT Mr. Graham's unopposed "Motion to Take Judicial Notice and to Supplement the Record on Appeal."


Entered for the Court,


Robert Henry
Circuit Judge