**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LEO D. GRAHAM,

Defendant - Appellant.

No. 07-3042

(D. Kansas)

(D.C. Nos. 01-CV-3316-JTM and
99-CR-10023-JTM)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **ANDERSON**, and **MURPHY**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This 28 U.S.C. § 2255 case is before us for a second time,[1] this time on appeal from the district court's evidentiary hearing following our remand to that court. After conducting the evidentiary hearing, the district court determined that defendant and appellant, Leo D. Graham, Jr., had not received ineffective assistance of counsel, rendering his guilty plea involuntary, nor, even if his counsel was ineffective, had Graham been prejudiced thereby. We affirm.

## BACKGROUND

Much of our factual recitation is taken from our prior unpublished decision in this case. United States v. Graham, 179 Fed. Appx. 528 (10th Cir. 2006). Graham pled guilty to one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). He had been serving a state sentence of imprisonment for bank robbery when the federal government obtained the original indictment and lodged a detainer against him. The Interstate Agreement on Detainers Act ("IADA") therefore governed Graham's delivery to federal court and disposition of the pending charges. See 18 U.S.C. App. 2, §§ 2, 9. The IADA "creates uniform procedures for lodging and executing a detainer, *i.e.*, a legal order that requires a

---

[1]We granted a certificate of appealability ("COA") on the issue of ineffective assistance of counsel in Graham's first appeal of the denial of his 28 U.S.C. § 2255 petition. Because this appeal is from an adverse ruling by the district court following our remand, the original COA remains in effect. To the extent there is, *arguendo*, any technical need for a new or renewed COA, we grant it.

State in which an individual is currently imprisoned to hold the individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." Alabama v. Bozeman, 533 U.S. 146, 148 (2001).

As we noted in our first Graham decision, two provisions of the IADA are particularly relevant to this appeal. First, Article III of the IADA provides that if the receiving state lodges a detainer against a prisoner in the sending state, the prisoner must be provided a copy of this detainer and be advised of his IADA right to be brought to trial in the receiving state within 180 days.[2] Second, the IADA prevents any receiving state from "shuttling" a prisoner between its custody and the sending state. A receiving state must complete a trial on all pending charges against the prisoner before returning him to the sending state's custody; otherwise, the court in the receiving state must dismiss the pending charges with prejudice. 18 U.S.C. App., § 2, Art. IV(e).

Where, as in this case, the receiving state is the federal government, special provisions apply. A federal court may return a prisoner to the custody of the sending state prior to the federal trial "pursuant to an order" and "after reasonable notice to the prisoner and the United States and an opportunity for a hearing." Id. § 9(2). In the event of an IADA violation, a federal court may dismiss a pending charge with *or without* prejudice, after considering (1) "the seriousness of the

---

[2]Under the IADA, the state in which a prisoner is currently serving a sentence is the "Sending State." The jurisdiction seeking to try the prisoner on additional criminal charges is called the "Receiving State."

offense," (2) "the facts and circumstances of the case which led to the dismissal," and (3) "the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." Id. § 9(1).

The entire history of Graham's case is as follows: On March 3, 1999, the federal government obtained the original indictment against Graham and three co-defendants for armed bank robbery and related charges. As indicated, at that time Graham was serving a 120-month sentence with the Kansas Department of Corrections ("KDOC"). On March 10, the United States Marshal's Service lodged a non-IADA detainer against Graham with the KDOC. The detainer was captioned a "Detainer Against Unsentenced Prisoner," although Graham was in fact serving a sentence at the time. Graham claims he was not given a copy of the federal detainer, though he became aware of it when the KDOC entered it on his inmate record.

The federal government then requested a writ of habeas corpus ad prosequendum to take temporary custody of Graham. The federal district court in Kansas issued the writ. On March 31, Graham was transferred to federal custody from a KDOC facility, and he was arraigned on April 2. Counsel was appointed and appeared with him at the arraignment. The district court detained Graham pending trial in federal court.

On May 3, 1999, the government filed a motion to dismiss Graham's indictment without prejudice. The reason for the motion was that two of

Graham's co-defendants were not yet available for trial because of trial or sentencing proceedings in other jurisdictions. The government thus sought dismissal to avoid multiple trials, expecting the other two defendants to be available within the next few weeks. The government did not serve Graham or his counsel with a copy of the motion, and the district court did not hold a hearing on the motion. The next day, the district court dismissed the indictment without prejudice, and Graham was returned to KDOC custody on May 10. Graham claims the government did not remove the federal detainer during his return to KDOC custody.

On January 12, 2000, the government filed a superceding indictment against Graham and his co-defendants, charging Graham with one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and one count of using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1). The district court again issued a writ of habeas corpus ad prosequendum. Graham was transferred again to federal custody on February 9 and arraigned. Counsel representing Graham on the original indictment also represented him on the superceding indictment. The district court detained Graham pending his federal trial. Through counsel, Graham filed several pre-trial motions, including a motion to sever his trial from that of his co-defendants. The district court granted the motion to sever.

On July 5, 2000, Graham pled guilty to one count of armed bank robbery as charged in the superceding indictment. Under the plea agreement, the remaining firearm count was dismissed. Prior to sentencing, Graham sent a letter to the district court stating that he had not been satisfied with his attorney's failure to investigate and explain to him his IADA rights. Graham pointed out in his letter that he had been "under sentence" in KDOC custody when the federal government incorrectly lodged its non-IADA detainer against him. The district court did not respond to the letter.[3] On October 4, 2000, the court sentenced Graham to 188 months' imprisonment, followed by thirty-six months of supervised release. He was returned to KDOC custody on October 18, in order to complete service of his state sentence, and the federal detainer against him was cancelled.

Graham did not directly appeal his conviction or sentence. Instead, on July 27, 2001, he timely filed a 28 U.S.C. § 2255 habeas motion to vacate, set aside, or correct his sentence. He argued that (1) his trial counsel's ineffective assistance had resulted in an involuntary guilty plea; and (2) he had been denied effective assistance of counsel at a critical stage of the proceedings, when the district court dismissed his original indictment without prejudice on May 4, 1999.

---

[3]The district court explained at the evidentiary hearing following the remand from our court that its policy was to "not correspond directly with anyone who is caught up in the system. My general practice is to send their letter to their lawyer and to say, you know, 'We received this. You do with it what you will.'" Tr. of Evid. Hr'g at 65, R. Vol. II. The court therefore apparently sent Graham's letter on to Graham's counsel.

The district court denied habeas relief in November 2001. It concluded that a violation of the IADA was not a constitutional violation and, "[a]bsent special circumstances, violations of the IADA are not a basis for collateral attack on a conviction." R. doc. 202, at 1 (Order, filed Nov. 20, 2001).[4] The court did not address Graham's Sixth Amendment claims.

Graham subsequently filed a motion to amend the judgment and to make additional findings of fact. In April 2004, the district court again denied his claims. The court, however, briefly analyzed the ineffective-assistance-of-counsel claim, stating: "The court has reviewed the record, transcripts, and pleadings, and finds that defendant received effective assistance of counsel as defined in Strickland v. Washington, 466 U.S. 668 (1984)." R. doc. 216, at 6 (Mem. and Order, filed April 22, 2004).

Graham appealed the denial of habeas relief, and this court appointed counsel for him and granted a COA on two issues: (1) Graham's contention that his guilty plea was involuntary because his counsel rendered ineffective assistance of counsel in failing to advise him that his rights under the IADA had been violated; and (2) Graham's contention that he was denied the assistance of counsel at a critical stage of the proceeding—specifically, the dismissal of the

---

[4]The order of the district court denying Graham relief in his first § 2255 petition is not a part of the record in this case. However, our prior decision quoted from and cited that order. We accordingly rely upon our prior decision's representation of what the district court concluded in its order. See Graham, 179 Fed. Appx. at 531.

original indictment without prejudice. In our decision addressing his appeal, we analyzed Graham's ineffectiveness claim under the familiar Strickland framework, requiring a demonstration of both deficient performance by counsel, as well as prejudice. Noting that the district court "neither held an evidentiary hearing nor made any factual findings before it denied [Graham's] Sixth Amendment claims," we concluded that the scanty record before the district court "did not 'conclusively' show that [Graham] was entitled to no relief." Graham, 179 Fed. Appx. at 534. We therefore determined that the district court had abused its discretion when it denied Graham's § 2255 motion without holding an evidentiary hearing and we remanded the case to the district court "for an evidentiary hearing where Mr. Graham will have the burden to prove that his counsel's ineffective assistance rendered his guilty plea involuntary." Id.[5]

On remand, the district court conducted an evidentiary hearing, at which Graham's trial counsel for both the original and the superceding indictment (Kevin Loeffler), another criminal defense lawyer (Kurt Kerns), and Graham himself testified. The government acknowledged at the hearing that it had not lodged the correct detainer under the IADA. Thus, there is no dispute that the IADA was violated.

_____

[5]We also held that the dismissal of Graham's original indictment without prejudice was not a critical stage of the proceedings, which would have obviated the need for him to establish prejudice from his counsel's deficient performance. That issue has not been raised in this appeal.

Graham's trial counsel, Loeffler, testified that he had been appointed to represent Graham on both the original and the superceding indictment. When asked if, during the course of his representation of Graham, Graham had expressed concerns about a possible IADA violation, Loeffler testified that Graham "brought . . . up several times that he was concerned with the detainer. I don't know when the first time was. I know he brought it up in a letter dated . . . May 7th or 6th that was delivered to me. I believe he brought it up in jail conversation prior to that." Tr. of Evid. Hr'g at 9, R. Vol. II. Loeffler further stated that, in his letter of May 6th or 7th, Graham expressed that his particular concern was that the detainer that was lodged against him was designated for a person who was un-sentenced, and that Graham was under a sentence at the time.

Loeffler testified that his records indicated he had done "research" on May 12, but did not identify the subject of his research. Id. at 11. He then stated that he met with Graham on July 2, and that on July 3rd his records reflected that he had done "[r]esearch on detainers." Id. Loeffler testified that he met again with Graham on July 4, that Graham pled guilty on July 5, and that his only recollection was that he "told [Graham] I didn't see there was a problem with the detainer. I advised him to go ahead and enter a plea on the case." Id. at 12. Loeffler stated that he has since realized that he "probably made some mistakes. . . . [I]t appears that there was not a hearing held; that I probably

should have requested a hearing . . . when the original indictment was dismissed to determine whether it was with prejudice or not." Id.

When asked if Graham had indicated to him that, had he believed that there was an IADA violation, he (Graham) would have pursued dismissal of the superceding indictment, Loeffler responded, "[h]e did not want to enter a plea. He didn't want to go to trial, and he wanted me to work out the best deal I could for him.  But he wanted the case to be dismissed. I recall that." Id. at 14.  When asked whether, "[k]nowing what [he] know[s] now," Loeffler would have advised Graham to enter a plea, Loeffler responded "I think I certainly would have filed a motion to dismiss and litigated that before I advised him to enter a plea."  Id.

On cross-examination by government counsel, Loeffler stated his belief that "[a]s early as May 12th . . . [he] began researching the issue of the detainer." Id. at 16.  Loeffler further stated that, on July 4, the day before Graham entered his guilty plea, Loeffler visited Graham and "went over the plea agreement, and I probably tried to answer any question he had on the detainer at that time." Id. at 18.  Loeffler testified that Graham had made it clear throughout Loeffler's representation of Graham that Graham "d[id] not want to go to trial on the Federal charges." Id. at 21.  Loeffler also testified that the plea agreement he negotiated for Graham, and which Graham signed, provided for the dismissal of a firearm charge which would have subjected Graham to an additional consecutive five-year term of imprisonment.

Graham also presented testimony at the hearing from Kerns, another criminal defense attorney, whom Graham presented as an expert on criminal defense. He testified that "[i]f there's an issue that may relate to a dismissal, speedy trial or IADA issue, you would at least want to discuss that with the client, discuss it with the prosecution, and either, one, litigate it or, two, get a better plea offer in exchange for not litigating it." Id. at 39. He further opined that the failure to do so would "fall below the reasonable standard" for effective representation. Id.

Finally, Graham himself testified. He testified about his concerns regarding the IADA: "each time we met I brought it to [Loeffler's] attention, asked him had he discovered anything else yet, and each time kind of just like: 'I'm still looking.' One time he told me, 'I talked to the prosecutor about it.'" Id. at 48. When asked whether he would have pled guilty had he known of his rights under the IADA, Graham responded, "No, I wouldn't." Id. at 50. When asked what he would have done, Graham replied, "I would have asked my lawyer to file a motion to dismiss because of the violation of the I[A]DA." Id. at 51. During cross-examination, Graham freely admitted his guilt in the armed bank robbery. He further conceded that, at the time he entered his guilty plea, he told the court that he was satisfied with the representation Loeffler had given him. Id. at 58. Government counsel then posed the following question to Graham:

> If you had pursued your motion to dismiss and your motion was granted, but it's granted without prejudice, meaning the case was dismissed, but the United States is able to refile the very same charges against you, at that point you have two choices: You can go to trial on the charges or you can ask your attorney to pursue a plea agreement like you did. What would you do if those are your choices?

Id. at 61. Graham responded, "I'd have to go for a plea agreement." Id.

Following the evidentiary hearing, the district court issued its memorandum and order. The court noted that defense witness Kerns, an experienced criminal defense attorney, testified that, had he represented Graham, "he would have filed a motion seeking to dismiss the indictment for a violation of the IADA." Mem. & Order at 2, R. Vol. I, doc. 258. The court then held:

> Here, counsel advised Graham that his best course was to plead guilty. Given the seriousness of the charges against him, the substantial evidence in support of those charges, the technical nature of the detainer defect and the utter absence of any indicia of bad faith on the part of the government, and consequently given that the chances of obtaining a dismissal with prejudice were remote, the court cannot say that Graham's counsel was deficient in failing to present such a motion. The court does not find that counsel's performance was unreasonable under all the circumstances of the case.
>
> Further, even if counsel's performance in failing to present a motion to dismiss were deemed deficient, Graham suffered no appreciable prejudice, since under the circumstances of the case the court would have denied any such motion; given the circumstances of ths case, a dismissal without prejudice was the only appropriate resolution.

Id. at 2-3. The district court went on to explain why dismissal without prejudice would have been the appropriate disposition of this case, and then concluded that,

given that "the court would not have dismissed the initial indictment with prejudice, . . . Graham has failed to demonstrate the existence of any prejudice arising from the putative ineffective assistance of counsel." Id. at 4.

Graham appeals, arguing the district court erred in concluding that (1) Graham's counsel's advice to plead guilty in this case was not outside the range of competence demanded of attorneys in criminal cases; and (2) even if counsel was ineffective, Graham suffered no prejudice.

**DISCUSSION**

We review the claim of ineffective assistance of counsel de novo. United States v. Holder, 410 F.3d 651, 654 (10th Cir. 2005). "When reviewing a district court's denial of a § 2255 petition, we review questions of law de novo and questions of fact for clear error." United States v. Harms, 371 F.3d 1208, 1210 (10th Cir. 2004) (citation omitted).

The Strickland test applies to Graham's claim of ineffective assistance of counsel. "[T]he two-part [Strickland] test applies to challenges to guilty pleas based on ineffective assistance of counsel." Hill v. Lockhart, 474 U.S. 52, 57 (1985). Under the first part of the Strickland test, Graham must show that his counsel's representation "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. He must thus show that his counsel's advice to plead

-13-

guilty was outside "the range of competence demanded of attorneys in criminal cases."  Hill, 474 U.S. at 56.

> The second part of the Strickland test, addressing prejudice,
>
> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Id. at 59.  "We may address the performance and prejudice components in any order, but need not address both if [Graham] fails to make a sufficient showing of one."  Fields v. Gibson, 277 F.3d 1203, 1216 (10th Cir. 2002) (quoting Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999)).

We turn directly to the prejudice part of the Strickland test.  Graham alleges he would have proceeded to trial had he been informed that there was an IADA violation, or he would at least have sought dismissal of the indictment, and, in any event, would not have pled guilty.  We have "held that a petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's error, although necessary, is ultimately insufficient to entitle him to relief."  Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001).  "Rather, we look to the factual circumstances surrounding the plea to determine whether the petitioner would have proceeded to trial."  Id.  Additionally, we consider the strength of the prosecutor's case against the petitioner in assessing whether the petitioner would,

in fact, have proceeded to trial rather than pleading guilty. Id. (observing that the Supreme Court in Hill "note[d] that courts applying this standard will often review the strength of the prosecutor's case as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial").

In this case, as Graham himself concedes, there was no doubt as to his guilt with respect to the armed bank robbery charge. Thus, the prosecutor's case was strong, and it was highly unlikely that a trial would have resulted in an acquittal. Further, as the district court found, had Graham refused the plea agreement offered and attempted to pursue whatever avenue for relief was available based on the IADA violation, the overwhelmingly likely outcome would have been a dismissal of the indictment without prejudice. Under the IADA, in determining whether to dismiss a pending charge with or without prejudice because of an IADA violation, the court considers "the seriousness of the offense," "the facts and circumstances of the case which led to the dismissal," and "the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." IADA, 18 U.S.C. App., § 9(1). As the district court determined, all of those factors strongly support the conclusion that the proper outcome in this case would have been a dismissal without prejudice. Indeed, the district court stated that it would have dismissed the case without prejudice had the IADA violation come to light.

Given that the indictment would have been dismissed without prejudice, the government could, and most likely would, have simply filed another indictment, and Graham would have been faced with deciding whether to accept a plea agreement or go to trial. In light of his admission of guilt regarding the crime, including his admission at the evidentiary hearing, it is highly unlikely he would have proceeded to trial. Thus, he would have been hoping to obtain the best plea agreement. Indeed, Graham basically testified to that effect at the evidentiary hearing. And inasmuch as the plea agreement Graham signed following the superceding indictment already included the dismissal of the firearm count, which would have required an additional consecutive five-year prison term, it is difficult to see what more favorable outcome Graham could reasonably have anticipated.[6]

In sum, we agree with the district court that Graham has shown no prejudice, even assuming his counsel's performance was deficient. We accordingly affirm the denial of Graham's § 2255 petition.

---

[6]Presumably, the firearm charge would be included in any new indictment, and Graham and the government would again negotiate whether dismissal of that charge would be included in any new plea agreement.

**CONCLUSION**

For the foregoing reasons, the order of the district court is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge